**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond O. SOPHER et al., Defendants.
In The Matter of Criminal Contempt of
Frank W. OLIVER, Appellant.**

**No. 14905.**

United States Court of Appeals
Seventh Circuit.

June 16, 1965.

Melvin B. Lewis, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Robert J. Collins, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

The appellant, Frank W. Oliver, prosecutes this appeal from a judgment order of the District Court adjudging him guilty of a direct contempt committed in open court and imposing a fine in the amount of $1,000.00 as punishment for said contempt. The incident upon which the court's findings and conclusion are based occurred during the course of the trial of a criminal case. The appellant, an attorney, was counsel for Raymond O. Sopher, who with four other defendants was being tried under an indictment

charging extortion in violation of 18 U.S.C.A. § 1951. In the course of his closing argument to the jury appellant made certain statements which the court found to be mis-statements of material facts knowingly made.

Appellant contends, among other things, that the record does not support the court's findings and does not warrant the conclusion, implicit in the court's judgment order, that appellant's conduct was misbehavior punishable as a contempt within the purview of 18 U.S.C.A. § 401. That statute defines the court's power to punish for contempt and, insofar as it is here pertinent, provides:

"A court of the United States shall have power to punish by fine or imprisonment, at its discretion such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; * * * *"

The record discloses that during the course of the criminal trial a government witness, B. Alden Smith, testified with respect to the content of a conversation with the defendant Sopher which took place on May 7, 1963, on which occasion Smith handed Sopher an envelope containing $3,087.00—which money, the government contended, was a payment extorted in violation of the provisions of 18 U.S.C.A. § 1951. Sopher subsequently took the stand and on direct examination testified with respect to the same conversation but either contradicted, denied or otherwise varied Smith's testimony as to what had been said. On cross-examination Sopher was asked a series of questions in which apparently what purported to be verbatim quotations from the conversation were read to him from a written document and he was asked whether this in fact represented the conversation, or refreshed his recollection as to the conversation. Sopher answered that he did not recall the material read to him as having been part of the conversation.

After the defense had rested, and out of the presence of the jury, the prosecution requested that preliminary to proceeding to lay a foundation for the introduction of a tape recording in evidence the court and counsel listen to it out of the presence of the jury. It was represented that the document from which government counsel had read during the cross-examination of defendant Sopher was a transcript of a recording of the May 7, 1963, conversation between Smith and Sopher from which transcription government counsel had selected the material read to Sopher and about which he was questioned on the cross-examination.

At this juncture the jury had heard the government's version of the content of the conversation from its witness, Smith, and the repetition thereof in the form of the material read to Sopher during the latter's cross-examination. The court expressed concern over the cumulative aspect of again presenting the government's version of the conversation to the jury through the playing of the tape recording if, after presentation of the foundation evidence, the recording was found to be admissible. The court sought some alternative in order to avoid any possible imbalance or added dramatization of this rebuttal evidence which might result from playing the tape to the jury.

Defense counsel were furnished with copies of the transcript of the contents of the tape in order that they could follow it while listening to a play-back of the tape and thus determine the accuracy of the written transcript. The tape was then played before the court and counsel out of the presence of the jury. Defense counsel then withdrew for consultation after which they advised the court they would not stipulate as to the admissibility of the recording but would require that the government proceed to present its foundation evidence—the defendants reserving their right to make appropriate objections. After further discussion between the court and counsel it was agreed, however, that if the court found

the recording admissible it would not be played to the jury but it would be stipulated that the material read from the written transcript to Sopher during his cross-examination represented an accurate recitation of those portions of the conversation. In this connection appellant stated, "I think we can stipulate that those parts; that is, assuming the foundation is laid, that those parts read by [government counsel] were part of the conversation". It appears from the context that it was understood that the stipulated admission was to be limited to those portions of the conversation government counsel had read from the written transcript of the recording during the cross-examination of Sopher.

The government proceeded with its foundation testimony and after hearing the same the court ruled the recording admissible and received it in evidence. The court then inquired if the tape should be played or the jury advised as to the stipulation. Defense counsel requested the latter and the court, after an introductory statement recalling to the jury's attention the statements read to Sopher and about which he was questioned on cross-examination, stated to the jury:

"It is stipulated by all the counsel and the parties that the statements read by [government counsel] in that cross-examination are true and correct as reflected on the transcription of that conversation which was made on the wire which is in evidence as Government Exhibit 14."

The record then shows the court's inquiry and the following colloquy:

"Is that correct, gentlemen?

Mr. Bush [a defense counsel]: That was the stipulation.

Mr. Oliver: Well, not quite.

The Court: You correct me if I am in error.

Mr. Oliver: That those matters appeared among others; the others are not in evidence.

The Court: No, but we are not playing the whole transcription be-

cause some of it is irrelevant, some of it you have heard as you heard the statements already, but these matters are stipulated to be true and correct and the rest of the tape is not being directed to the attention of the jury at this time."

In his closing argument to the jury the appellant, after stating that Smith controlled the "on" and "off" mechanism of the recording device with which he had been equipped by government agents prior to his meeting with Sopher, and characterizing some of Smith's statements in the course of the conversation that followed as being leading in nature, said:

"This is Smith loading up his tape device in a fashion that will tend to support Smith's story. That is what Smith was doing, and whenever, I am sure, anything that was a little unsatisfactory so far as what Smith wanted to develop on this tape was concerned all Smith had to do was to reach inside his coat and punch a button; and, so, of course, what Mayor Sopher told you from the stand or much of it was not on the tape. That is perfectly understandable. Furthermore, the government has stipulated with us that what you did hear was but part of the tape that they do have. The rest of it is not—"

At this point appellant was interrupted by an objection by government counsel. The jury was excused and a lengthy colloquy followed. It culminated with the jury being recalled and a statement by the appellant as follows:

"Vis-a-vis my comments just before the recess, I should like the jury to understand that in my opinion the record will not sustain the inference that the machine which Mr. Smith had fastened to his body on May 7, 1963, was in fact turned on or off by Smith during that conversation, and I think it also will not sustain the inference that there was matter on that tape which tended to corroborate Mayor Sopher's version of

the conversation but which was not stipulated to."

On the basis of the evidence and the effect of the agreements and final stipulation of counsel, we agree with the District Court that neither of the inferences appellant's earlier argument would have urged the jury to draw was reasonably supportable. While there was testimony that Smith had been instructed in the mechanical use of the recording device, and that he could reach a button to turn it off and on, there was uncontradicted testimony by Smith that the device was turned on by a government agent prior to Smith's meeting with Sopher and that the device remained on during the entire conversation and was turned off after the conversation by the government agent. And, although the stipulation concerning the content of the conversation between Smith and Sopher was limited to the portion thereof which had been read by government counsel from the written transcript of the recording during Sopher's cross-examination, in our judgment it precluded, and there was no basis for, any inference that the tape contained anything to corroborate Sopher's contradictory version of the conversation or that Smith had manipulated the recording device so as to omit the recording of any part of the conversation favorable to Sopher. In the context here presented, the effect of the agreement not to play the tape before the jury but in lieu thereof to advise the jury that the statements read during Sopher's cross-examination were true and correct portions of the conversation which took place, left the matter in a posture in which the jury was not free to draw inferences contrary thereto.

Thus, the statements made by the appellant in his closing argument were improper. But the government's prompt objection, the trial court's immediate ruling and comment, and appellant's subsequent statement to the jury, appear to have remedied that impropriety in so far as the case on trial was concerned. As we view the record, it discloses the appellant erred in his conclusion as to the possible permissibly arguable inferences. No doubt, as a member of the bar, he owed the court a more careful appraisal of the record, in the light of the effect of the stipulation, before advancing the argument he attempted. But in our judgment, his failure in this respect is too tenuous a basis to support a finding of contempt. Positive evidence of a deliberate intent to pursue a course of improper argument or prohibited conduct is absent. And the record presents no element which supplies the indicia requisite to categorize appellant's conduct as contemptuous. Improprieties of defense counsel of the nature of those involved in Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717, aff'g. United States v. Sacher, 2 Cir., 182 F.2d 416, and MacInnis v. United States, 9 Cir., 191 F.2d 157, cases relied upon by the government are not presented by this record.

The governing statute (18 U.S. C.A. § 401) was intended as a drastic delimitation of summary contempt power (In Re McConnell, 370 U.S. 230, 233–234, 82 S.Ct. 1288, 8 L.Ed.2d 434) and it was pointed out long ago in Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656, that:

> "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted * * *."

On the record before us it is not clearly shown that appellant's conduct, although unjustifiable, actually obstructed the district judge in the performance of judicial duty. Cf. In Re McConnell, supra.

The judgment order of the District Court is reversed.

Reversed.