**In re John C. McCLURE.**

**Appeal of Earl SWICEGOOD, Aurin Dale Little.**

**No. 24133.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 21, 1971.

Decided March 12, 1971.

As Amended April 19, 1971.

Mr. John G. Perazich, Washington, D. C. (appointed by the District Court) for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Sandor Frankel, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

FAHY, Senior Circuit Judge:

In proceedings before the District Court appellant was convicted of contempt of court, in violation of 18 U.S.C. § 401, which in pertinent part provides:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> *       *       *       *       *       *

A suspended sentence of 10 days imprisonment was imposed. Because the evidence does not support an essential element of the offense charged, namely, that the conduct of appellant obstructed the administration of justice, we reverse.

Appellant and a companion were seated as spectators in the District Courtroom during the first degree murder trial of a friend of appellant. A witness for the prosecution was testifying, apparently describing the killing in a manner damaging to the defendant on trial. Another spectator in the courtroom,[1] sitting one

---

1. The other spectator was a friend of the deceased whom the defendant on trial was accused of killing.

row directly behind appellant, testified at the contempt hearing that he heard appellant say that "[h]e was sick and tired of this ___ ___ [an obscene characterization of the prosecution witness] lying and he pointed at him and said, 'I'm going to blow that ___ ___ [the same obscenity] away.'" The spectator described the pointing to be with the index finger straight and the thumb "pointed up in the air." A detective sitting three rows behind appellant also testified that he saw appellant point toward the witness and say something.[2] The detective did not hear what was said, however, and only learned of the threatening language from the spectator sitting behind appellant.

Appellant testified in substance that the spectator above referred to must have misunderstood what he had said and done. He testified in some detail as to how he came to believe that the witness testifying against his friend was "overdramatizing the whole thing," as if his friend "was a gangster that had just went in there and killed the ___ ___ [the same obscenity] * * * just went in there and started killing people." Thus, he did not deny the obscenity but gave a different version of his use of it. According to his testimony the gesture he used was illustrative of what the witness on the stand was accusing his friend of having done, rather than as a gesture against the witness.

The foregoing is the substance of the case, aside from procedural irregularities advanced by appellant, which we need not consider, and aside also from appellant's very respectful attitude when he was lectured by the judge during the contempt proceedings. He vigorously disclaimed any contempt of the court's authority or any desire to interfere with the trial.

The trial judge did not have the slightest knowledge of any disturbance or misbehavior on appellant's part when it occurred. There is also no evidence that the witness who was testifying was aware of any threat by words or gesture or of any disturbance created by appellant. None of the principals of the trial —judge, jurors, parties, witnesses, or counsel—were aware of the behavior, which quickly began and quickly ended. No one except the testifying spectator was disturbed. In these circumstances neither the trial nor the "administration of justice" can be said to have been obstructed; nor can there be said to have been any tendency in appellant's conduct to be obstructive.[3] An essential element of contempt not having been established by the evidence, *see* Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919); United States v. Sopher, 347 F.2d 415, 418 (7th Cir. 1965), the conviction must be reversed. The motion of defense counsel for acquittal we think should have been granted.

Reversed with direction that appellant be discharged.

---

2. For some reason this officer had been instructed to watch appellant and his companion. We gather from the record that the reason for this was that they appeared to be "hippies." No other reason is given for the surveillance.

3. The Government cites United States v. Pearson, 62 F.Supp. 767 (N.D.Cal.1945), and Gridley v. United States, 44 F.2d 716, 742, 744 (6th Cir. 1930), cert. denied, 283 U.S. 827, 51 S.Ct. 351, 75 L.Ed. 1441 (1931), to support the conviction. *Pearson* involved contempt by disobeying an injunction issued by the court. It was only in this context that the court referred to an act "calculated to embarrass, hinder, or obstruct the court" or "lessen its authority or its dignity." The conduct in *Gridley* which was held to support the contempt conviction was that of the defendant on trial advancing toward a witness on the stand and calling him "a damned liar"; in another instance in the same case the conduct involved a conversation during a trial recess between the defendant on trial and two jurors, which had a tendency to influence them even if not so intended. The conduct in the case at bar, since it did not communicate anything to anyone in the court except the spectator sitting behind appellant, we think was not sufficient to constitute contempt even in the sense of having a tendency to obstruct the administration of justice.