**UNITED STATES of America**

**v.**

**Bernard E. MEYER et al.**

**In re Philip HIRSCHKOP.**

**Misc. No. 28-72.**

United States District Court,
District of Columbia.

July 28, 1972.

David Rein and Forer & Rein, and Monroe Freedman, Washington, D. C., for respondent Hirschkop.

Harold H. Titus, Jr., U. S. Atty., and John A. Terry, Roger M. Adelman and Gregory C. Brady, Asst. U. S. Attys., Washington, D. C., for the United States.

Addison M. Bowman and Chester J. Antieau, Georgetown University Law Center, Washington, D. C., amici curiae.

Albert E. Arent, John Bodner, Jr., Ramsey Clark, John W. Douglas, Harry M. Plotkin, Paul A. Porter, Daniel A. Rezneck, and Robert L. Wald, Washington, D. C., amici curiae.

FRANK A. KAUFMAN, District Judge.*

This case grew out of the trial of the so-called "D.C. Nine," seven of whom were found guilty in a jury trial before Judge John H. Pratt of this Court.[1] Those convictions were recently reversed

---

* Of the United States District Court for the District of Maryland, sitting by designation in the District of Columbia pursuant to 28 U.S.C. § 292(c) and in this Court by further designation pursuant to 28 U.S.C. § 291(c).

1. The other two members of the "D.C. Nine" pled *nolo contendere*.

and the case against the said seven was remanded for new trial. United States v. Dougherty (D.C. Cir. June 30, 1972). At the conclusion of the trial of the seven, Judge Pratt cited respondent, one of court-appointed defense counsel, for criminal contempt and the next day read to him the following certificate:

. . . pursuant to Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C., I hereby certify that I saw and heard the contempts of court hereinafter described and that they were committed by Philip J. Hirschkop in the actual presence of the court during the trial of a criminal proceeding before me entitled United States v. Meyer, et al., Criminal No. 872–69.

I find that the said Philip J. Hirschkop was guilty of the following offensive, contumacious and unethical . . . contempt of court:

1. In addressing the court concerning motions of defendants to represent themselves and for the court to recuse itself, he used insulting, derogatory and disrespectful language. Tr. at 26, 28, 83–87.[2]

2. On numerous occasions he conducted himself in a disrespectful manner and, on some of these occasions, refused to obey the court's directions to resume his seat after the court had ruled. Tr. at 5, 8–9, 224, 397, 398, 416, 443, 456–457.[3]

3. He addressed the court at the bench in a derogatory and disrespectful manner concerning the seating in the court room and concerning his participation at bench conferences. Tr. at 95–97, 283–285.[4]

4. He engaged in disrespectful and discourteous conduct which offended the dignity and decorum of this proceeding and which was degrading to

this tribunal, in violation of the standards imposed by the American Bar Association Code of Professional Responsibility and the Canons of Professional Ethics. ABA Code of Professional Responsibility, Canon 7, EC–7–36, DR 7–106(C) (6) (1969); ABA Canons of Professional Ethics, Canon 1 (1967). Further, in the context of a difficult trial of nine defendants he failed to fulfill his obligation as an officer of this Court. See appropriate portions of the trial transcript.

Wherefore, it is this 11th day of February, 1970, ordered pursuant to 18 U.S.C. § 401, that Philip J. Hirschkop be and he hereby is sentenced to serve a term of 30 days.

On appeal, the Court of Appeals remanded for a "full hearing before a different judge," United States v. Meyer, 462 F.2d 827, 845 (D.C. Cir. 1972). The essential facts of this case are summarized as follows in Judge McGowan's remand opinion (at 829):

Because of the disposition we make of this case, we need not recount in detail the events which took place during the criminal trial. The defendants were active in the peace movement; and the charges against them concerned a ransacking of the Washington offices of the Dow Chemical Company. Against the advice of their counsel, the defendants attempted to dismiss their appointed lawyers and to proceed *pro se*, intending to admit the acts charged and to appeal to the conscience of the jury by asserting what they considered to be the morality, as distinct from the legality, of their deeds. The chief impediment to this strategy—and the eventual source of friction between the defendants and appellant, on the one hand, and the trial judge, on the other—was the trial judge's denial of the motion to pro-

---

2. All references herein to "Tr." are to the transcript of the trial of the "D.C. Nine."
   The following appears at Tr. 26–28 and 83–87—see Appendix, Part 1(a) and (b).

3. The following appears at Tr. 4–5; 8–9; 223–24; 397–99; 416; 442–43; 455–

57—see Appendix, Part 2(a)–(g), inclusive.

4. The following appears at Tr. 95–97 and 283–85—see Appendix, Part 3(a) and (b).

ceed *pro se*, and his insistence that counsel be responsible for the conduct of the trial.

The trial was marked by angry interruptions by the defendants, heated arguments by counsel, an apparent lack of cooperation between the defendants and their counsel, a melee in the courtroom on the fifth day of the trial, the ejection of several spectators, and the removal of the jury from the courtroom on several occasions. By the trial's close, two of the defendants had pleaded *nolo contendere* to the destruction of property charge, and two others had been cited for contempt for their involvement in the melee.

After the jury found the seven defendants who had not pled *nolo contendere* guilty of destruction of property, as well as of the lesser included offense of unlawful entry, the trial judge called appellant to the bench, cited him for contempt, and asked him to appear the following afternoon so that a contempt certificate could be read in his presence. On the following day, appellant appeared before the trial judge with counsel, who stated that he had not been able to examine the trial transcript and requested that (1) the matter be referred to another judge for adjudication, and (2) appellant be given the benefit of the procedural guarantees contained in Rule 42(b). Both requests were denied, and the trial judge read the . . . certificate * * *.[5]

On the next day, the trial judge filed a complaint against appellant with the Committee on Admissions and Grievances of the District Court, and subsequently appeared as the sole complaining witness in hearings before that body. [Footnotes omitted.] [6]

After the remand, this Court issued an Order requiring the respondent to show cause why he should not be adjudged guilty of the above contempts. Respondent filed a motion to vacate that show cause Order, contending that each of the four specifications in the contempt citation were defective *per se* as a matter of law. After submission of briefs and hearing oral argument, this Court granted the motion to vacate the fourth specification and denied that motion as to the other specifications. Accordingly, trial was held in connection with those three specifications. The Government, although it had earlier indicated that it would call certain witnesses, rested its case on the basis of the trial transcript in the "D.C. Nine" case. Respondent thereupon moved for acquittal under the first three specifications. After a hearing, respondent's motion was granted by this Court and respondent was found not guilty of the charges of contempt set forth in Judge Pratt's citation.

Specification 4 neither states facts nor makes reference to any trial transcript pages; rather it refers only to violation of certain ABA canons and failure to fulfill respondent's obligation as an officer of this Court. As such it

5. The certificate is set forth on page 975, *supra*.

6. The complaint filed with that Committee is the subject of an Opinion and Order filed in this Court on October 18, 1971 in Misc. 41–70, In the Matter of a Complaint Against Philip J. Hirschkop, A Member of the Bar of the United States District Court for the District of Columbia, in which Judges Corcoran, Robinson and Waddy of this Court held that "there is substantial evidence to support a finding that the respondent went far beyond the bounds of zealous representation of a client and was guilty of professional misconduct and conduct prejudicial to the administration of justice" but that in view of his "good reputation at the bar" and because "this is an isolated incident of misconduct on the part of the respondent and that generally the respondent's behavior before the various courts in this area has been exemplary * * * [t]his panel believes that the record justifies a censure" but not disbarment or a suspension. Hirschkop's appeal from that Order is now pending in the Court of Appeals.

By agreement of both sides in the within case, the entire trial and appellate records in connection with the "D.C. Nine" trial and appeal and the disciplinary proceedings concerning Mr. Hirschkop have been made part of the record in this case.

is lacking in the specificity required by Rule 42 of the Federal Rules of Criminal Procedure, requiring that the order of contempt "recite the facts" (Rule 42(a)) and that the notice "state the essential facts constituting the criminal contempt charged and describe it as such" (Rule 42(b)). Pietsch v. President of United States, 434 F.2d 861, 863–864 (2d Cir. 1970); Tauber v. Gordon, 350 F.2d 843, 845 (3d Cir. 1965); Parmelee Transportation Co. v. Keeshin, 294 F.2d 310, 314–315 (7th Cir. 1961). While a judge's contempt certificate need not set forth in full the complained of trial incidents, it must refer to them with sufficient specificity so as to state their nature and the reason why they constituted contempt. Nor can any such lack be cured by the furnishing of particulars at a subsequent date by the United States Attorney, as was attempted in this case.

■ Only a small part of the tape recording of the trial has been preserved and is available. That part is included in the record in this case. No contention has been made that the tape reveals any disrespectful tone or manner not otherwise indicated by the bare trial transcript. Since the Government did not avail itself of its right [7] to produce testimony and evidence over and beyond the bare transcript record and the above-mentioned tape recording, the evidence produced at trial by the Government in support of the first three specifications is the same as the Court of Appeals had before it on the appeal from Judge Pratt's summary contempt conviction of respondent. While Judge McGowan quoted part of the transcript referred to in the first specification [8] in support

of the majority's holding requiring a full trial before a judge other than Judge Pratt, he added: "We imply nothing as to whether these remarks constitute contempt of the trial court" (462 F.2d 844). Judge Tamm, concurring, distinguished the within case "upon a factual basis from our recent opinion in In re Brown," 454 F.2d 999 (D.C. Cir. 1971), in which the conviction for contempt of an attorney who had represented an indigent client in this Court even though he was not a member of the bar of this Court, was reversed. Judge Miller, dissenting from Judge McGowan's majority opinion, believed that Judge Pratt "had full authority to act as he did in punishing the appellant for inexcusable and outrageous behavior in the courtroom." (At 845).

■ "Four elements are required in order to support a contempt conviction under Section 401(1)." [9] These elements are: (1) misbehavior which (2) occurred in or proximate to the presence of the Court and which constituted (3) "obstruction of the administration of justice" and which was performed (4) with the required degree of intent. All of Hirschkop's alleged contemptuous conduct took place in the presence of the Court. The other three elements are not as easily disposed of. Judge Cummings, writing in United States v. Seale, 461 F.2d 366 (7th Cir. 1972) defined misbehavior "as conduct inappropriate to the particular role of the actor." Even assuming the wide latitude a lawyer has under Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965), in arguing that a judge should disqualify himself for bias, nevertheless there would

---

7. *Cf.* Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 69 L.Ed. 767 (1925); United States v. Seale, 461 F.2d 345 (7th Cir. 1972); Offutt v. United States, 232 F.2d 69, 71 (D.C.Cir.), cert. denied, 351 U.S. 988, 76 S.Ct. 1049, 100 L.Ed. 786 (1956).

8. Part of Tr. 83–87, including those words emphasized in Appendix, Part 1(b).

9. United States v. Seale, 461 F.2d 366 (7th Cir. 1972).

18 U.S.C. § 401(1) provides, in relevant part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice * * *.

seem to be no need for a lawyer to use words of the kind respondent used.[10] But the existence of misbehavior alone under specification 1—and under specifications 2 and 3 which, in this criminal case applying the beyond-a-reasonable-doubt standard, this Court has more difficulty in finding—does not add up to contempt in the absence of intent and obstruction.

In Offutt v. United States, 232 F.2d 69, 72 (D.C. Cir. 1956), Judge Fahy wrote: "[T]here is no contempt unless there is some sort of wrongful intent." Judge Fahy also noted in *Offutt* that where the conduct is "clearly blameworthy," the conduct itself may be sufficient to establish the required intent. And in In re Brown, 454 F.2d 999, 1007–1008 (D.C. Cir. 1971), Judge Robinson referred to the need to establish "a contumacious intent." *See also* Sykes v. United States, 144 U.S.App.D.C. 53, 444 F.2d 928, 930 (1971), and the discussion by Judge Cummings in *Seale, supra* (461 F.2d 367), and the latter's conclusion that "[t]he minimum requisite intent is better defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful."[11] While this Court does not find any of Hirschkop's alleged contemptuous conduct "clearly blameworthy" within the standards enunciated by Judge Fahy in *Offutt*, it does find that certain of his spoken words add up not only to misbehavior but also were wilfully and designedly spoken. But neither all nor any part of what Hirschkop did or said actually obstructed the district judge in the performance of his duty. In In re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), in a per curiam opinion, the Supreme Court, quoting from Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), recently noted: "The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it

kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . . ." 404 U.S. at 555, 92 S.Ct. at 660, 30 L.Ed.2d at 711. Earlier the Supreme Court had indicated that standard in In re McConnell, 370 U.S. 230, 234, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), and Ex parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919).

Writing in In re Brown, *supra* at 1005 of 454 F.2d, Judge Robinson stressed that "actual, not theoretical, obstruction is the test, and that any claimed obstruction must be proven precisely," citing In re McClure, 143 U.S.App.D.C. 114, 442 F.2d 836 (7th Cir. 1971), and United States v. Sopher, 347 F.2d 415 (7th Cir. 1965). In In re McClure, Judge Fahy, in a case involving a spectator at a trial, not an attorney, labelled obstruction as "[a]n essential element of contempt." And Judge Cummings in *Seale* and in his companion opinion, In Matter of Dellinger, 461 F.2d 389 (7th Cir. 1972), stressed the need for actual and material obstruction. *Seale*, 461 F.2d pp. 370–371; *Dellinger*, 461 F.2d p. 399. The Government argues that Judge Fahy in *Offutt, supra*, 232 F.2d at 72, and particularly in n. 5, indicated that "clearly blameworthy" behavior can establish the presence not only of intent, but also of the essential elements of contempt, and that therefore Judge Fahy's statements in *Offutt* mean that in this Circuit actual obstruction, when an attorney is involved, is not needed. But in this Court's view the Government overreads Judge Fahy's analysis in *Offutt* and disregards the Supreme Court's position as spelled out most recently in *Little* as well as the Court of Appeals' recent pronouncements in *Brown, Sykes* and *McClure*. In *Offutt*, Judge Fahy did indicate that in some cases conduct could be so outrageous that it unmistakeably established

---

10. See the words at Tr. 83–87 emphasized in the Appendix, Part 1(b).

11. (P. 368). Judge Cummings cited the *Brown* and *Sykes* opinions in this Court on a *"See"* basis in support of that position.

by its own presence both intent and obstruction. That type of conduct did not occur in this case. In sum, this Court holds that "actual, not theoretical, obstruction" is an essential element of contempt, and finds, as trier of the facts, that the Government failed to prove beyond a reasonable doubt that respondent's conduct constituted an obstruction of the trial of the "D.C. Nine" as that essential element of criminal contempt has been defined and refined by the Supreme Court and the Court of Appeals. Accordingly, this Court reaffirms its grant of respondent's motion for acquittal with respect to specifications 1, 2 and 3. Having previously found specification 4 fatally defective as a matter of law, this Court finds respondent not guilty under each and all of the four specifications.

In this case, a number of amicus briefs have been filed by leading practicing attorneys and by law professors. They stress, convincingly, sincerely and correctly, that courts must make themselves available for the vigorous presentation by lawyers of views held by their clients, regardless of how unpopular or how distasteful to a judge or to anyone else those views may be. That need is reflected by the narrow scope of 18 U.S.C. § 401(1) and the requirements of Criminal Rule 42 and the pronouncements of the courts in criminal contempt cases. But there is also a need for lawyers to think twice before they use words of disrespect in a courtroom. We live in an age when we are taught not to keep bottled up inside ourselves our pent-up emotions. Children speak to parents and teachers, people generally speak to those in authority, in ways which were not countenanced many years ago. But even in an age which permits, perhaps wisely, and even encourages speaking out, lawyers in the courtroom can press their causes and stand up to judges without being abusive. The very system of justice which those who filed amicus briefs here-

in seek to make available for the fair and unbiased presentation and determination of all causes, popular and unpopular alike, can only be maintained and improved if respect for law and justice —and the courts—exists. If trial lawyers by their courtroom conduct state their own disrespect for judges in clearly spoken words, no one can expect others to have respect for our judicial system.

Mr. Hirschkop was aggrieved primarily because the "D.C. Nine" were not permitted to represent themselves and because Judge Pratt would not permit the assertion of their *Zenger*-type defense. In neither instance were the views Mr. Hirschkop urged frivolous, as the majority opinion in *Dougherty* with regard to the former and Chief Judge Bazelon's dissenting views with regard to the latter make clear. In the majority opinion, Judge Leventhal (slip opinion, p. 30) noted the "difficult problems" faced by Judge Pratt and commented upon Judge Pratt's "commendable approach" and "humane and flexible spirit." Judge Pratt's calm conduct of the trial and the fact that only once did he even impliedly warn respondent of contempt [12] were not matched by Mr. Hirschkop in controlling his own displeasure because he felt Judge Pratt had made up his mind in advance on the self-representation and *Zenger* issues. A judge with a busy calendar who does his homework and who comes on the bench with views of the issues presented by the case he is trying makes possible the availability of speedy and well-administered justice. If that trial judge errs, he is subject to review and reversal. A lawyer who thinks he errs should of course press his client's cause to the utmost but without abuse, disrespect or defiance of the trial judge and, of course, without indulging in conduct adding up to or causing obstruction of the trial. *See* In re McConnell, *supra*, 370 U.S. at 235–236, 82 S.Ct. 1288; United States v. Seale, *supra* at 370–371. While respondent's conduct in the "D.C.

---

12. Tr. 95–97—see Appendix, Part 3(a). Warnings are not *per se* required in order for a contempt citation validly to issue.

United States v. Seale, 461 F.2d 345, p. 366 (7th Cir. 1972)

Nine" trial falls short of criminal contempt, it illustrates the need, even for a sincere and able lawyer, to match his dedication to his client's cause with an appropriate degree of respect for our judicial process.

## APPENDIX

*Part 1*

(a)  MR. HIRSCHKOP: I will be brief, Judge, because I firmly believe I am just wasting my time. I think you have made your mind up before you have heard anything this morning. I am very discouraged about the proceedings this morning.

With the first two witnesses, you didn't even ask them why they wanted to represent themselves until two volunteered that representation. It might not have come before the Court. I think it is very vital information to ask people about their education as far as their background in law. I don't know whether education in law has ever been standard for self-representation. As a matter of fact, you want to bring half the lawyers or three-quarters of the lawyers, I would test them in constitutional law and flunk them all.

THE COURT: Would you address yourself to the matter of the motion, Mr. Hirschkop?

MR. HIRSCHKOP: The motion is that I'm speaking of, Your Honor, and that is a question of whether a person has to be trained in law to represent themselves [*sic*].

There are, sitting at counsel table, three highly educated lawyers, four highly educated lawyers, we would welcome Mr. McDaniels to stay, and we have the highest respect for him. But there are four people sitting at the table, three of us are on the faculty of Georgetown; one is a full professor there, and I am an associate professor. We have no problems as to the technicality of the motion, on a technicality of whether something falls within certain rules of evidence. I feel competent to determine the rules of evidence and have these people who I represent, and make an objection for the group. That's just it; it's just a technical matter.

We are not, however, just here to raise technical matters. We are here to disclose the substance of the charges against them, which I think, that anybody could argue as well, or better, than I can, who were involved.

We have spoken at length, with the eight people we represent; in great lengths, many, many whole nights; discussing just this question. They have maintained for a long time that they would prefer to represent themselves.

We have, probably through our high bound [*sic*] position as lawyers, prevailed upon them, "Well, you can do it later, but let's get this out of the way." There was nothing we had to do as lawyers that

involved a legal education. Indeed, I hope your rulings this morning is [sic] not indicative of what we are going to have to face within the next several days. They may not need lawyers, and have no intention of letting me speak, or Professor Bowman speak. They don't need lawyers at all. It's the objections that are most vital, and that is what you haven't let us make, so far, this morning.

You haven't let us speak for the record, so far, this morning. I, personally, feel I am wasting my time here today. Up to this time, you have not let me address at the podium.

Professor Bowman and I, and Miss Nickerson, a Harvard trained lawyer, are here, and if there are any questions, we can answer the questions.

I have never, never heard this standard. There is no case on the books with a standard that only a lawyer can represent themself [sic].

I'm afraid, Judge, that if you won't let them represent themselves, you are going to have to use the power of the Marshals, the Court and your robes, which you can, to order me to represent them because I won't do it unless you so order me to do so. I want to have an order of the Court before I violate my conscience.

THE COURT: Mr. Bowman. [Tr. 26–28.]

(b)   MR. HIRSCHKOP: Yes, Your Honor. At this time I would move the Court to disqualify itself in this case. I have given considerable thought to the conversation we had in chambers where the Court indicated that it had heard rumors, that it had heard from police officials, at least, certain rumors concerning threats to the courthouse or of some disorders or something of that nature.

I have inquired into this matter. It is my understanding that the control and care and custody of the courthouse remains under the control of the chief judge of the District [Court] and the chief judge of the Court of Appeals.

It is unquestioned, Judge, I mean with all respect to you as a person, I don't say that out of any disrespect, it is unquestioned in my mind that you came in here with your mind absolutely made up that these people were going to have counsel regardless of what they said, that we went through motions this morning that demean our system, because they really had no due process. The judge entered an order against Mr. Bowman, myself, and other legal staff that we may not speak to the

press, never telling us why we may not speak to the press, never giving us the courtesy or our due process rights; and when I say the courtesy, I mean the legal courtesy. I can't raise any private courtesy, because the Court has been very courteous. But again, as an injunction, I never heard of any such injunction. "I don't have to tell you why, I am the judge. My black robes give me an unfettered power that I may use and not explain to anyone." Well, that is true, technically that is true, Judge. You can have me locked up for quite a while or any person at this table. "You are in contempt. I don't like what you told me this morning." And I suggest to the Court and very honestly suggest to the Court, and very candidly, that you are abusing that power.

As to the self-representation, okay, you made your mind up. *The problem is that you made it up before you ever came to this courtroom.* The question of that injunction, that is a very harsh injunction. These nine people are going to hold press conferences every day unless you enjoin them from doing it, and then I don't know what will happen. What can they say that I can't. They came to me and said, "Look, we want a press conference; we want you there because we may say something, you know, technically, it is wrong." I said, "I can't get involved in a conference with the press, that the Judge is going to put me in jail, I am not going to give him that opportunity. I don't know whether he wants to or not, but I am not going to give him the opportunity." They say, "Well, if the press asks us a technical question, what do we do?" I said, "Well, you give them whatever answer you believe," you know. They say, "Well, what can you tell the press that we can't?" Well, I don't know what I can tell the press that they can't. I think decency, which is all due process boils down to, the fair play that Justice Cardozo spoke about, requires at least you have some reason to issue an injunction. If you have such a reason, give it. What can I do, what can Mr. Bowman do, or what can my other sisters and brothers at the bench do that will threaten this trial that these nine couldn't do. It is a very harsh matter. You called the newspaper and said, Look, I don't want anything in the papers about this case until we go to trial. It is a very harsh action, Judge. I seriously challenge that action, the propriety of it, without calling on us first. I think we are entitled to be heard. *I get the feeling we are wasting our time here. I can go back to my office and do other things rather than take part in a pro forma hearing.*

*I fully believe, and with all due respect to the Court as a person, that you made up your mind about everything except the length of the sentence.* And I ask you to explore your own conscience, Judge, because if that is the path you are going down, you shouldn't sit on this case. You should disqualify yourself and have another judge sit on the case. And I don't suggest that we will get a better judge. But we will get a judge that won't have had the exposure, who won't have reached the conclusions that you have already concluded. And these are difficult things for me to say, Judge, and yet I feel compelled to say them. I am very upset by the injunction. I am very upset by the unexpected ruling on self-representation this morning. I am very upset by when I got up this morning to make an objection, I would make it with all courtesy to the bench, with all the experience I have in trial courts and appellate courts just for the record and you say, sit down, I don't want to hear from you, you will have your chance. We are not looking for a chance. A trial isn't just the testimony of one witness. Cross-examining a witness is a very vital element to the trial. I don't question for a moment that throughout this trial all counsel will be faced with getting up, as happened to Mr. McDaniels this morning, and if I did not, that is not what I mean at all, that is not what I want at all. It is a difficult way to represent a person. I am not afraid of being embarrassed, I am not afraid of being told I am wrong. *I am afraid of making this system rotten by not being able to do my job, and that is representing people, and that is what I am here for. I am not here to grease the wheels of the Court. I am terribly afraid that you have made up your mind that you are going to dispatch this case as expeditiously as possible. I am not here to expedite it. I will do it with all the dignity of a lawyer and all the sanctions of the bar in mind, but I will not take part in greasing the wheels, not of justice, but the wheels of expeditiously packing these nine people off to jail as quickly as we can.*

And I am afraid, Judge, and I don't say for a minute that is what you intend to do consciously, but that is what you are doing, by having reached the conclusions which you reached, which you have so obviously reached, and out of all courtesy but all necessity, I ask the Court to disqualify itself, to think seriously about it, not to say, no, I won't do it, but to think seriously about it before you say you won't. [Tr. 83–87; emphasis added.]

*Part 2*

(a)  THE COURT: And you have been doing this since your ordination?

MR. HIRSCHKOP: Pardon me, Judge. It has come to our attention that there are people in the hallway, and—

THE COURT: You may sit down, Mr. Hirschkop.

MR. HIRSCHKOP: Well, Your Honor, we have asked that this trial be public.

THE COURT: The trial has not begun yet, Mr. Hirschkop, please be seated.

MR. HIRSCHKOP: Well, Your Honor,—

THE COURT: Be seated, Mr. Hirschkop.

MR. HIRSCHKOP: Well, for the record, may I make a statement, Your Honor?

THE COURT: You may not make one for the record at this time.

MR. BEGIN: This session is not public?

THE COURT: This session is not public. It will be public shortly. We have some logistic questions to take care of, and let me say to you, and to all the co-defendants, you will have an opportunity at the time of trial. I am trying to determine now, whether to permit you to represent yourselves. [Tr. 4–5.]

(b) MR. HIRSCHKOP: Your Honor, I don't know what the relevance of this is, looking into the background. They are obviously all intelligent, highly educated people. We can see that none of them have practiced law.

THE COURT: I have heard you, Mr. Hirschkop. Let us proceed.

MR. HIRSCHKOP: If you don't let the lawyers conduct their defense in this courtroom, you might as well send us all home.

THE COURT: If you have any questions you wish to ask, you will be permitted to do so.

MR. HIRSCHKOP: I am asking the relevancy of your questions, Your Honor.

THE COURT: I will determine the relevancy. Sit down, Mr. Hirschkop.

MR. HIRSCHKOP: Well, I think when we ask questions you should answer them. I think we deserve that.

THE COURT: Mr. Hirschkop will you please be seated? [Tr. 8–9.]

(c) THE COURT: It can't be held in their presence. I think the performance today has shown the wisdom of having appointed counsel to advise and preclude a disruptive trial. It would be impossible to conduct this trial with nine people representing themselves or even a portion of them. I think this has been demonstrated here.

MR. HIRSCHKOP: For the record, I think I have an obligation to clear that up. We would be more than

happy to limit examination of witnesses to three people. I assume Mr. Bowman and I will be both examining and the independent defendant.

THE COURT: Mr. Hirschkop, the persons questioning the witnesses will be the lawyers; and you can get all the questions you want from the lawyers.

MR. HIRSCHKOP: You put a statement in the record and say we can't correct that statement. It is a very harsh ruling.

THE COURT: I have stated for the record what my observation is and somebody upstairs is going to be reading this.

MR. HIRSCHKOP: Let them read both sides.

THE COURT: You may have to repeat something in the interests of the record.

MR. HIRSCHKOP: Judge, as I said before, I won't react to threats. I have respect for your power but I won't react to threats.

THE COURT: Nobody is trying to push you around. I have been trying to be fair and considerate.

MR. HIRSCHKOP: People have spoken out for themselves on things we just can't say for them. [Tr. 223–24.]

(d)   MR. HIRSCHKOP: Your Honor, couldn't the Marshals move away from the defendants? They cannot have a conference.

THE COURT: Will you please instruct your clients to be seated.

THE DEFENDANT ARTHUR MELVILLE: We are not his clients.

THE COURT: Ladies and gentlemen of the jury, you may excuse yourselves.

(Whereupon, the jury left the courtroom.)

MR. HIRSCHKOP: If Your Honor please, this whole last exchange was precipitated by three Marshals moving immediately behind the defendants.

THE COURT: We are perfectly willing to have the Marshals elsewhere in the courtroom, Mr. Hirschkop, but I wish you would instruct the defendants that they are not to arise during the course of the proceedings with the jury present.

MR. HIRSCHKOP: May I make my point, Your Honor?

THE COURT: You get my instructions, Mr. Hirschkop. I am ordering you to do this.

MR. HIRSCHKOP: But, Judge,—

\*     \*     \*     \*     \*     \*     \*     \*     \*

THE DEFENDANT ARTHUR MELVILLE: We don't recognize him.

THE DEFENDANT DOUGHERTY: This is precisely why he can't defend us.

THE DEFENDANT ARTHUR MELVILLE: Your Honor,—

THE DEFENDANT O'ROURKE: We would like to speak to you directly.

THE DEFENDANT ARTHUR MELVILLE: Yes.

THE COURT: No, you may not.

THE DEFENDANT ARTHUR MELVILLE: It is not that we have any intent to have a disruption of the Court. We intend to speak clearly to you and the jury.

THE DEFENDANT DOUGHERTY: We have every right.

THE DEFENDANT ARTHUR MELVILLE: That is our right.

THE COURT: But you will do it when the time comes for you to do that. We cannot do it at any time. We have to follow this procedure.

THE DEFENDANT ARTHUR MELVILLE: Your Honor, we cannot time our speaking. It is important.

The COURT: I intend to do so.

THE DEFENDANT ARTHUR MELVILLE: You are violating our rights.

THE COURT: Sit down, Mr. Melville.

MR. HIRSCHKOP: If Your Honor please, before the jury comes back, on the question of the Marshals, they could be sitting up in the corner, far from the bench, where they can consult privately with one another.

THE COURT: They can consult privately with one another. If the Marshals step aside it will be with the understanding that the defendants will please keep their seats. [Tr. 397–99.]

(e)   MR. HIRSCHKOP: Your Honor, I would otherwise cross-examine the witness at length. As to the memory of his, it is remarkable that he was in there five minutes and he could remember these things. But it is impossible. I have never been inside the building, and it is impossible without consulting my clients as to what is inside those premises.

THE COURT: I take it you have no cross-examination?

MR. HIRSCHKOP: No, I have no questions, but I think for the record it should be clear why I cannot cross-examine.

THE COURT: I think it is perfectly clear.

MR. HIRSCHKOP: Your Honor, I don't think I have made it full enough.

THE COURT: I think you made it full enough, and you made it yesterday.

MR. HIRSCHKOP: This particular witness, there are several things that the Court of Appeals—

MR. GREEN [the prosecutor]: Let's go to the bench.

THE COURT: Mr. Hirschkop, please be seated.

MR. HIRSCHKOP: Your Honor, you are not letting me state my difficulties.

THE COURT: Your difficulties are noted in the record. [Tr. 416.]

(f) MR. HIRSCHKOP: May I ask one question?

THE COURT: Yes.

BY MR. HIRSCHKOP:

Q. Was this film of the sound track?

A. Yes, it was.

MR. HIRSCHKOP: Can we see it with the sound track?

MR. GREEN: No, it will not be shown with the sound track, Your Honor.

MR. HIRSCHKOP: Your Honor, I would request that we see it with the sound track. We may decide we may want to use it later on ourselves.

THE COURT: We will deny your motion, Mr. Hirschkop.

MR. HIRSCHKOP: Well, Your Honor, I think we have a right to see it with the sound track.

THE COURT: Please be seated, Mr. Hirschkop.

DEFENDANT SLASKI: Can you give a reason for denying it?

THE COURT: Please be seated, Mr. Slaski.

MR. HIRSCHKOP: May I state the reason for my motion, Your Honor?

THE COURT: No, I have heard you. I think I know what your reasons are.

MR. HIRSCHKOP: Well, Your Honor, if you can infer my reasons, you don't need me. May I again ask to be relieved—

THE COURT: You may be seated, Mr. Hirschkop.

MR. HIRSCHKOP: You are not allowing me to do my job as a lawyer.

THE COURT: Mr. Hirschkop, sit down.

DEFENDANT MALONE: Judge, we haven't seen the film.

THE COURT: Mr. Bowman. [Tr. 442–43.]

(g) BY MR. HIRSCHKOP:

Q. You say that some of the film that was cut showed empty offices?

A. Empty in the sense that there were no people in the office.

Q. And I assume they showed the furniture that was sitting in its place as well as furniture that was over-turned?

A. I couldn't say definitely. I think there was more furniture overturned than was up.

Q. It may well have included furniture that was in its place or areas of the offices that were undamaged?

A. No.

Q. You wouldn't remember that exactly?

A. The areas that I went into were damaged.

Q. The areas that you went into. Were there also undamaged areas in that office?

MR. GREEN: If you know.

THE WITNESS: Are you talking about the entire office complex? I only went into one portion of it.

MR. HIRSCHKOP: Your Honor, I ask if Mr. Green has an objection to make an objection, not to instruct the witness how to answer the question.

THE COURT: I haven't heard any objection yet. Mr. Green, do you have one?

MR. GREEN: No, Your Honor.

MR. HIRSCHKOP: Well, I ask that he be instructed not to interrupt the examination.

THE COURT: Mr. Green doesn't need any instructions from the Court, Mr. Hirschkop. Go ahead with your questions.

MR. HIRSCHKOP: Your Honor, I don't think it is fair for the Court to allow—

THE COURT: Go ahead, Mr. Hirschkop, ask your question and don't argue.

MR. HIRSCHKOP: I have my own objection, Your Honor.

THE COURT: Ask your question.

MR. HIRSCHKOP: May I address the Court?

THE COURT: No, ask your question.

MR. HIRSCHKOP: Well, Your Honor—

THE COURT: Mr. Hirschkop, ask your questions. When you have asked your questions—

DEFENDANT SLASKI: Your Honor, with all due respect, he does not represent us. Even though he does not represent us, you force him on us—

MR. HIRSCHKOP: If you won't allow me to do my job, I can't ask questions, Your Honor.

THE COURT: All right. Sit down, Mr. Hirschkop.

DEFENDANT SLASKI: I think you are being very unfair, Your Honor.

THE COURT: Sit down, Mr. Slaski.

Mr. HIRSCHKOP: Your Honor, I would like to verify that I was sitting down when you said that. [Tr. 455–57.]

*Part 3*

(a)  MR. HIRSCHKOP: We are playing a one-sided game now. I want the U. S. Attorney people up here. You won't order them up here. He has had two other U. S. Attorneys at the table this morning. They walked out of the courtroom. You don't mind what the U. S. Attorney does, but it is what the defense lawyers do that upset you.

THE COURT: As far as I am concerned, one lawyer could handle this case for the defense, but they happen to have three, and under the rules they are entitled to three.

MR. HIRSCHKOP: There happen to be several U. S. Attorneys here this morning, Your Honor. Why don't you order all of them when they come in and get to that table, they got to be here for the whole trial. You wouldn't dream of doing that.

THE COURT: Mr. Green is the only counsel of record.

MR. HIRSCHKOP: Well, then, I insist that no other attorneys be at his table from now on. Would you do that?

MR. GREEN: They are not at counsel table.

MR. HIRSCHKOP: Can I bring anyone at counsel table I want?

MR. BOWMAN: I am not sure that our being there at given times is necessarily going to be as much a problem as it now may appear to be. I think if one of us has to leave for a day or half a day that we can at that time secure permission from everyone concerned, but I think there is a great difficulty with respect to telling us that we must confine our clients to speak through us, because they are our clients, not only because Your Honor has denied the motion, which they feel very strongly about; and as Your Honor has realized, they are very strong individuals and they are very articulate, and they feel very strongly their positions.

MR. HIRSCHKOP: I have no intention of even discussing this, Your Honor. You can order me to the bench, but you can't make me take part in the conference. I have no intention of discussing that in the absence of these people. They have got a right to take part in that discussion to hear it.

THE COURT: You mean every bench conference?

MR. HIRSCHKOP: That is what they insist upon, Judge.

THE COURT: *Mr. Hirschkop, you are treading close to the line. I am telling you that right now.*

MR. HIRSCHKOP: You might as well dismiss me from the case. Threats won't force me to conduct the defense in a different way.

THE COURT: Let us proceed. There is nothing further, is there, that is pending? Let us call in the jury. [Tr. 95–97; emphasis added.]

(b)　MR. HIRSCHKOP: Judge, there are three rows taken up by research assistants and press. There are two empty rows before the bar.

THE COURT: You let me settle the order of this courtroom, Mr. Hirschkop. I am trying to be as fair as I can.

MR. HIRSCHKOP: I have a right to make motions. If you won't let me make motions, Judge, let me go home.

THE COURT: The seating is my responsibility.

MR. HIRSCHKOP: You have your own motives, Judge, don't impugn my rights. I have a right under the Constitution to see they have a public trial. If you don't want me to bare [*sic*] out that right as my duties of a lawyer, send me home.

THE COURT: I'll take care of the public matter. I am doing it now.

MR. HIRSCHKOP: I am suggesting there are two empty benches either the press or research assistants could sit on and moving the others to—

THE COURT: Please be seated. I heard you.

MR. HIRSCHKOP: Could we have a rule, Judge?

THE COURT: I will decide it in my own good time and my own way.

(END OF BENCH. OPEN COURT)

DEFENDANT MELVILLE (MRS.): Your Honor, I wish to reiterate the request for a larger courtroom. Half my relatives are outside.

THE COURT: I think they have been called and haven't responded, that is why the general public was let in. If your family is available we will get them in. Would you like to check?

MR. HIRSCHKOP: Pardon me, Judge. It seems like the U. S. Attorney has a lot more than seven people on their front bench and we were limited to seven people. May we pick people out to fill our list?

THE COURT: You may sit down, Mr. Hirschkop.

MR. HIRSCHKOP: Thank you, Judge. [Tr. 283–85.]