UNITED STATES of America, Appellee

v.

Joseph L. McGAINEY, Appellant.

No. 93–3030.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 13, 1994.

Decided Oct. 21, 1994.

Richard K. Gilbert, appointed by this Court, argued the cause and filed the briefs for appellant.

Chrisellen R. Kolb, Asst. U.S. Attorney, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Atty., John R. Fisher, and Robert R. Chapman, Asst. U.S. Attys.

Before: SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant challenges his conviction for criminal contempt under 18 U.S.C. § 401(1) (1988), claiming that his threatening gesture directed at a testifying witness in a drug conspiracy trial and the subsequent disruption of the trial proceedings did not constitute an "obstruction of the administration of justice." We affirm.

## I.

On October 22, 1992, appellant entered Courtroom 10 of the United States Courthouse for the District of Columbia, where Judge George H. Revercomb was presiding over the trial of six defendants charged with crimes arising out of an elaborate drug distribution conspiracy. The trial, *United States v. Andre Williams*, Crim. No. 91–0559, was the second in a series of prosecutions collectively known as the "R Street" case. Due to the high-profile nature of the case, the trial was held in Courtroom 10, which is equipped with special security precautions. Spectators were screened by a magnetometer at the door and were seated in an area separated from the well of the courtroom by a plexiglass partition. Two court security officers and six Deputy United States Marshals were also present, guarding the defendants and monitoring the crowd of spectators.

Upon entering the courtroom that morning, appellant sat down in the third row of the spectator area next to Margaret Williams, the mother of two of the defendants in the trial. A prosecution witness, Dax Reynard Nelson, was in the midst of his testimony. Nelson had the previous day named appellant as a member of the "R Street" organization and had testified to drug dealing by both appellant and his father, Leo "Pops" McGainey. Nelson had also described the relationship of both McGaineys with Derrin Perkins, one of the "R Street" defendants in *Williams*. After arriving, appellant questioned Mrs. Williams and learned that Nelson had testified against him and his father.

On the morning in question, Deputy Marshals Robert Parker and Brian Ennis were guarding the defendants from their posts next to the defense table. As Nelson continued his testimony, the deputies observed appellant use the forefinger and thumb of his right hand to form the shape of a gun, which he held to his head as he faced the witness stand for approximately three to five seconds. When appellant made eye contact with Deputy Parker, he quickly moved his hand, appeared to scratch his ear, and put his hand down.

After discussing the incident with Ennis, Parker left the courtroom and told a court security officer what had occurred. Parker then returned to the courtroom, identified himself to appellant, and insisted, after appellant refused his request several times, that appellant leave the courtroom. Appellant was taken into custody outside the courtroom, where he was arrested on an outstanding warrant.

After appellant's arrest, Parker went to a door at the back of the courtroom and notified Deputy Pickett, who was in charge of courtroom security that day and was guarding Judge Revercomb and the jury. After leaving the courtroom and being informed of the incident by Parker, Pickett returned and spoke to the courtroom clerk, who immediately turned and informed the judge. The proceedings were interrupted while Judge Revercomb, who had observed appellant being removed from the courtroom, spoke with

Pickett and requested more information about the incident. Pickett left, returned approximately five minutes later, and spoke to the judge again. At that point, Judge Revercomb halted Nelson's testimony, excused the jury, and held a bench conference to determine whether the threatening conduct had been observed by the witness, jury, or counsel.[1]

During the conference, which lasted approximately nine minutes, the prosecutor, at the judge's direction, questioned Mr. Nelson and determined that he had seen appellant in the courtroom but did not see the threatening gesture. Neither the judge nor the attorneys observed the gesture. The judge decided not to *voir dire* the jury, as there was no indication that any jurors had observed appellant's action.

■ Appellant was convicted in a trial before Judge Aubrey E. Robinson, Jr. of criminal contempt under 18 U.S.C. § 401(1) (1988),[2] finding that the government had established the four required elements of the offense beyond a reasonable doubt. These elements are misbehavior of a person, in or near to the presence of the court, which obstructs the administration of justice, and which is committed with the required degree of criminal intent. *United States v. Warlick*, 742 F.2d 113, 115 (4th Cir.1984); *accord American Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 531 (5th Cir.1992); *Vaughn v. City of Flint*, 752 F.2d 1160, 1167 (6th Cir.1985); *United States v. Seale*, 461 F.2d 345, 366–67 (7th Cir.1972).

Judge Robinson found that appellant did make the threatening gesture. He concluded that the government witnesses were credible and thought there were inconsistencies and discrepancies in appellant's testimony. The court held that in the context of a major drug

trial in progress, and considering the content of Nelson's testimony and Mrs. Williams' statements to appellant, appellant's conduct constituted misbehavior in the court's presence with the intent to threaten or intimidate the witness. Noting that under *In re Brown*, 454 F.2d 999, 1005 (D.C.Cir.1971), conviction under § 401(1) requires an "actual" obstruction of the administration of justice, the court determined that the confusion, delay, and disruption of the trial proceedings caused by appellant's threatening gesture satisfied that test. *In re McGainey*, Crim. No. 92–0404, Mem.Op. at 6–7 (D.D.C.1993), citing *Vaughn*, 752 F.2d at 1168. *See also In re McConnell*, 370 U.S. 230, 233–34, 82 S.Ct. 1288, 1290–91, 8 L.Ed.2d 434 (1962) (§ 401(1) requires "actual obstruction").

## II.

■ Appellant challenges only the district court's determination that his conduct actually caused an obstruction of the administration of justice. He argues, relying primarily on our own opinion; *In re McClure*, 442 F.2d 836 (D.C.Cir.1971), that to establish an obstruction, the government, as a matter of law, must show that a defendant's conduct disrupted the trial. Otherwise, the defendant's conduct might be challenged under 18 U.S.C. § 1512 (1988) (tampering with a witness) or another statute which grants the defendant the protection of a jury trial.

We agree with the government that *McClure*, although in some respects quite similar, is distinguishable from this case. In *McClure*, a conviction under 18 U.S.C. § 401(1) was reversed because the alleged contemptuous conduct was observed only by a spectator sitting behind the defendant in the courtroom and a detective sitting three

---

1. Appellant's argument that the district court erroneously found Judge Revercomb's court to have been in "recess" during the trial as a result of appellant's actions is irrelevant to our decision here. The district court's findings correctly emphasized that a break in the proceedings occurred because of the bench conference, during which the jury was excused from the courtroom. Whether this interruption was a "recess" or simply a halt in the proceedings has no bearing on our analysis of whether the confusion and delay in the courtroom caused by appellant's action

constituted an actual obstruction of the administration of justice.

2. This section states:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice.

rows further back. The spectator claimed to have heard McClure make a threatening statement about the testifying witness and point at him with his hand in the shape of a gun. *McClure,* 442 F.2d at 837. Although the detective saw McClure point toward the witness and say something, he admitted that he was not aware that the statement or the conduct were threatening. *Id.* Perhaps for that reason (the opinion does not say), neither the detective nor any other court official took any action at the time of the incident; as the court noted, "[n]o one except the testifying spectator was disturbed." *Id.* Under these circumstances, the court concluded that there was no evidence of disruption of the proceedings, delay, or any other consequences of McClure's conduct which would constitute "actual obstruction of the administration of justice" under the statute.[3]

The important difference in the two cases, then, is that McClure's alleged misconduct caused no apparent interference with the trial proceedings, whereas here, as Judge Robinson correctly determined, appellant's actions in Judge Revercomb's courtroom resulted in delay, confusion, and the diversion of judicial resources. McGainey's threatening conduct was observed by Deputy U.S. Marshals, who responded immediately. While only the spectator was "disturbed" by the misconduct in *McClure,* appellant's conduct in this case caused a significant interference with the trial proceedings, including diverting Deputy Marshals Parker and Pickett from their posts, and requiring Judge Revercomb to be interrupted twice, Nelson's testimony to be halted, and the jury to leave the courtroom for almost 10 minutes. The judge was also obliged to engage in a colloquy with counsel at the bench in order to determine whether the threatening conduct had in any way prejudiced the trial.

To be sure, we did observe in *McClure* that "[n]one of the *principals* of the trial—judge, jurors, parties, witnesses, or counsel—were aware of the behavior which quickly began and quickly ended." *McClure,* 442 F.2d at 837 (emphasis added). Drawing on

that sentence, appellant contends that the involvement of the marshals would be inadequate to cause an obstruction of the administration of justice. We think that is an unwarranted reading of the opinion. The court was not faced with a contention, as here, that the marshals' attention and normal efforts were diverted by a defendant's action. The crucial next sentence in the opinion is, as we have noted, that "*no one* except the testifying spectator was disturbed." *Id.* (emphasis added). We are now faced with an issue not raised in *McClure.* In this case, appellant's behavior did require the attention of the marshal providing courtroom security. *See, e.g., United States v. Wright,* 854 F.2d 1263, 1264 (11th Cir.1988) (that judge summoned marshals to subdue defendant supported government's evidence of an actual obstruction); *United States v. Trudell,* 563 F.2d 889 (8th Cir.1977) (refusal to follow marshals' direction to clear the hallway to allow the jury to enter the courtroom constituted actual obstruction); *United States v. Hall,* 176 F.2d 163, 167 (2d Cir.), *cert. denied,* 338 U.S. 851, 70 S.Ct. 90, 94 L.Ed. 521 (1949) (criminal contempt sanctions warranted where marshals summoned to subdue defendants who shouted at the judge outside of the presence of the jury). More importantly, in this case it was not just the marshals whose attention was drawn to defendant's behavior—Judge Revercomb was obliged to inquire into the matter during the trial, and, surely, the judge's attention is the core judicial resource deployed at a crucial trial.

Appellant asserts that the judge's efforts, including the bench conference, to determine whether a juror or witness had been tainted, are part of the very investigation of the complaint against defendant in a criminal contempt proceeding. Relying on the Seventh Circuit's opinion in *United States v. Oberhellmann,* 946 F.2d 50 (7th Cir.1991), he maintains that the government may not rely on its own investigation (or the judge's) to satisfy the element of obstruction in the crime of criminal contempt. Otherwise, that element would, perforce, always be present. As the Seventh Circuit put it:

---

**3.** The court in *McClure* also suggested that it had reason to doubt the credibility of the only witness to the alleged misconduct, the spectator, noting

that he was a friend of the victim for whose murder the defendant was on trial. *McClure* at 836 n. 1.

The requirement of proving an obstruction of justice obviously cannot be satisfied by proof that the contempt proceeding itself, and such ancillary events as the complaint that touched it off, imposed costs, delay, etc. That would read the requirement of proving an obstruction of justice out of the law, for in every case of contempt the contempt proceeding itself imposes the sort of burdens that, if imposed by the act alleged to be contemptuous, would satisfy the requirement of proving an obstruction of justice.

*Oberhellmann,* 946 F.2d at 53.

We do not disagree with the Seventh Circuit, but appellant overlooks the distinction in this kind of case between a judicial inquiry—which, it would seem, a trial judge would be compelled to initiate immediately—to determine whether the defendant's conduct was observed by a witness or jury, and the analytically separate question whether defendant's actions constituted criminal contempt. As the trial transcript indicates, the judge's central concern during the bench conference was "whether or not [the threat] has affected the witness or the jurors." He also stated that he would use the time during the lunch recess later that day to "reflect further on whether or not [to] inquire of the jury." Just as an explosion in a courthouse might require a judge conducting a trial in that courthouse to interrupt the proceedings in order to determine whether the incident had affected the participants, regardless of its cause, appellant's behavior triggered Judge Revercomb's inquiry into the effect of appellant's action on the trial. This inquiry would have occurred even had the appellant actually only been pressing his temple because of a headache. In both cases the judge's investigation results from apprehension of the danger which the event may pose to the proceedings before him; the diversion of judicial resources caused by the contemporaneous investigation is therefore independent of any subsequent contempt proceeding. In this respect, our conclusion is akin to the Fourth Circuit's holding in *Warlick, supra.* In that case, the time and effort required for the trial judge to investigate whether the defendant's *ex parte* contacts with members of the jury venire had prejudiced the jury was found to constitute "actual obstruction of the administration of justice" under § 401(1). The court specifically noted that "[t]he administration of justice was obstructed because the judge and other court personnel were required to make an immediate investigation into the possibility of jury tampering as to all of the cases for which juries were drawn...." *Warlick,* 742 F.2d at 116. Similarly, in this case we are not concerned that the element of obstruction has been subsumed by the very proceeding in which it must be proved.

\* \* \*

We therefore affirm appellant's conviction.

*So ordered.*