## IN RE McCONNELL.

No. 498.   Argued April 10, 1962.—Decided June 18, 1962.

*Thomas C. McConnell,* petitioner, argued the cause and filed briefs *pro se.*

*Philip R. Monahan* argued the cause for the United States.   With him on the brief were *Solicitor General Cox* and *Assistant Attorney General Miller.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The petitioner Thomas C. McConnell, a lawyer, was summarily found guilty of contempt of court for statements made while representing the Parmelee Transportation Company in an antitrust suit for treble damages

and an injunction. The complaint charged that a number of defendants had unlawfully conspired to destroy Parmelee's business by restraining and monopolizing trade in violation of the Sherman Act.[1] Petitioner and his co-counsel, Lee A. Freeman, had done extensive pretrial preparation on the issue of conspiracy which was the heart of their case. At the very outset of the trial, however, the district judge on his own motion refused to permit counsel to try to prove their conspiracy charge, holding that they must first prove in a wholly separate trial that defendants' actions had resulted in an economic injury to the public—an erroneous holding since we have held that the right of recovery of a plaintiff in a treble damage antitrust case does not depend at all on proving an economic injury to the public.[2]

Cut off by the judge's erroneous ruling from trial of the basic issue of conspiracy and wishing to provide a record which would allow this ruling to be reviewed by the Court of Appeals, counsel for Parmelee asked counsel for defendants to stipulate that plaintiff would have introduced certain evidence of conspiracy had it been allowed to do so. Defense counsel refused to stipulate, however, insisting that Parmelee's counsel prepare their record by following the procedure set out in Rule 43 (c) of the Federal Rules of Civil Procedure, which requires that before an offer of proof is made questions upon which the offer is based must first be asked in the presence of the jury.[3]

---

[1] This action was brought under the Clayton Act, §§ 4 and 16, 38 Stat. 731, 737, 15 U. S. C. §§ 15, 26, and charged violations of §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2.

[2] *Radiant Burners, Inc.,* v. *Peoples Gas Light & Coke Co.,* 364 U. S. 656, 660; *Klor's, Inc.,* v. *Broadway-Hale Stores, Inc.,* 359 U. S. 207. See aso *Radovich* v. *National Football League,* 352 U. S. 445.

[3] Rule 43 (c) provides in part:

"In an action tried by a jury, if an objection to a question propounded to a witness is sustained by the court, the examining attor-

Unwilling to risk dismissal of their appeal for failure to follow Rule 43 (c), Parmelee's counsel proceeded to produce and question witnesses in the presence of the jury in order to lay the proper foundation for their offers of proof of conspiracy.  But during the process of this questioning the judge ordered it stopped and directed that any further offers of proof be made without first having asked questions of witnesses in the presence of the jury.  This ruling placed Parmelee's counsel in quite a dilemma because defense counsel was still insisting that all offers of proof be made in strict compliance with Rule 43 (c) and there was no way of knowing with certainty whether the Court of Appeals would treat the trial court's order to dispense with questions before the jury as an excuse for failure to comply with the Rule.  Petitioner therefore not only sought to make clear to the court that he thought defense counsel's objection was "right" [4] but also repeatedly insisted that he be allowed to make his offers of proof in compliance with the Rule.[5]  Following the trial the judge charged petitioner and his co-counsel Freeman in a number of specifications with being guilty of contemp-

---

ney may make a specific offer of what he expects to prove by the answer of the witness.  The court may require the offer to be made out of the hearing of the jury.  The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. . . ."

[4] Since our disposition of this case does not turn on whether petitioner was correct in thinking that Rule 43 (c) absolutely requires that all offers of proof in jury trials be based on questions before the jury, we express no opinion on that question.

[5] The district judge did not change his ruling and ultimately gave judgment for defendants on the grounds that plaintiff had not proved public economic injury and that the facts alleged in the complaint and the proof offered at the trial did not constitute a violation of the antitrust laws.  186 F. Supp. 533.  The Court of Appeals for the Seventh Circuit affirmed the decision on this latter ground.  292 F. 2d 794.

tuous conduct during the course of the trial. After separate hearings both lawyers were summarily found guilty by the trial judge on all specifications. Both appealed to the Court of Appeals, which reversed all of Freeman's convictions,[6] reversed two of petitioner McConnell's convictions, but, with Judge Duffy dissenting, sustained the conviction of petitioner on Specification 6—the specification based on petitioner's insistence that he be allowed to make offers of proof in compliance with Rule 43 (c).[7] Even as to this conviction, however, the Court of Appeals held that the jail sentence imposed by the trial judge should be reduced to a fine of $100. As in *Offutt* v. *United States*,[8] the "importance of assuring alert self-restraint in the exercise by district judges of the summary power for punishing contempt" prompted us to bring the case here.[9]

The statute under which petitioner was summarily convicted of contempt is 18 U. S. C. § 401, which provides that:

> "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
>
> "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice . . . ."

This section is based on an Act passed in 1831 [10] in order to correct serious abuses of the summary contempt power that had grown up and was intended as a "drastic delimitation . . . of the broad undefined power of the inferior federal courts under the Act of 1789," [11] revealing "a Con-

---

[6] 292 F. 2d 806.

[7] 294 F. 2d 310.

[8] 348 U. S. 11, 13.

[9] 368 U. S. 936.

[10] 4 Stat. 487. The present wording of § 401 comes from the 1948 revision and codification of Title 18. 62 Stat. 701.

[11] *Nye* v. *United States,* 313 U. S. 33, 45.

gressional intent to safeguard Constitutional procedures by limiting courts, as Congress is limited in contempt cases, to 'the least possible power adequate to the end proposed.' " [12] "The exercise by federal courts of any broader contempt power than this," we have said, "would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury." [13] And we held long ago, in *Ex parte Hudgings*,[14] that while this statute undoubtedly shows a purpose to give courts summary powers to protect the administration of justice against immediate interruption of court business, it also means that before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice:

> "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted . . . ."

Thus the question in this case comes down to whether it can "clearly be shown" on this record that the petitioner's statements while attempting to make his offers of proof actually obstructed the district judge in "the performance of judicial duty."

The Court of Appeals answered this question by sustaining Specification 6 only on the basis of petitioner's

[12] *In re Michael*, 326 U. S. 224, 227.

[13] *Ibid.*

[14] 249 U. S. 378, 383.

last sentence in the colloquy set out in the specification. That specification reads:

"On April 27, 1960, in the presence and hearing of the jury, after the Court had instructed the attorneys for plaintiff to refrain from repeatedly asking questions on subjects which the Court had ruled [were] not admissible, in the presence of the jury as distinguished from an offer of proof outside the presence of the jury, the following occurred:

" 'By Mr. McConnell: Now you are trying to tell us we can't ask these questions. We have a right to ask these questions, and until we are stopped from asking these questions we are going to ask them, because it is in our prerogative in doing it.

" 'By the Court: I am now stopping you from asking the questions about conversations with Mr. Cross, because I have ruled specifically, definitely and completely that it is not an issue in this case.

" 'By Mr. McConnell: We have a right to ask them.

" 'By the Court: You can offer proof on it.

" 'By Mr. McConnell: We have a right to ask questions which we offer on this issue, and Your Honor can sustain their objection to them. *We don't have a right to read the answers, but we have a right to ask the questions, and we propose to do so unless some bailiff stops us.*' " (Emphasis added.)

The record shows that after this colloquy petitioner's co-counsel asked for a short recess, that following this recess petitioner did not continue to ask questions which the judge had forbidden and that in fact he did not ask any more such questions again throughout the remainder of the trial. We agree with Judge Duffy who dissented below that there was nothing in petitioner's conduct suffi-

ciently disruptive of the trial court's business to be an obstruction of justice. It is true that petitioner stated that counsel had a right to ask questions that the judge did not want asked and that "we propose to do so unless some bailiff stops us." The fact remains, however, that the bailiff never had to interrupt the trial by arresting petitioner, for the simple reason that after this statement petitioner never did ask any more questions along the line which the judge had forbidden. And we cannot agree that a mere statement by a lawyer of his intention to press his legal contention until the court has a bailiff stop him can amount to an obstruction of justice that can be punished under the limited powers of summary contempt which Congress has granted to the federal courts. The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. The petitioner created no such obstacle here.

While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice. To preserve the kind of trials that our system envisages, Congress has limited the summary contempt power vested in courts to the least possible power adequate to prevent actual obstruction of justice, and we think that that power did not extend to this case. *Reversed.*

Mr. Justice Frankfurter and Mr. Justice White took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, dissenting.

With respect to the contempt count that was sustained by the Court of Appeals, this case involves nothing more than an ordinary exercise of the District Court's contempt power in aid of maintaining discipline and decorum in the courtroom. The most, I think, that could appropriately be said of the conviction on this count is that petitioner's unlawyer-like conduct did not merit a jail sentence. The Court of Appeals has removed all basis for criticism on that score by reducing the sentence to a $100 fine. In other respects its opinion displays an alert regard for the undoubted fact that the contempt power should always be exercised circumspectly and dispassionately, particularly when called into play by the conduct of an attorney in the course of sharply contested litigation.

I can hardly believe that the Court intends its opinion to mean that only a physical obstruction of pending judicial proceedings is punishable under 18 U. S. C. § 401. For a court's power to punish summarily for contempt has always been available as a sanction against the use of abusive and insulting language in a courtroom. See, e. g., *Offutt* v. *United States,* 348 U. S. 11; *Fisher* v. *Pace,* 336 U. S. 155, 159–160; *Ex parte Terry,* 128 U. S. 289, 307–309. And it can scarcely be supposed that Congress' enactment of 18 U. S. C. § 401 was intended to abrogate this power, even as the forerunner to that section was construed in *In re Michael,* 326 U. S. 224, 228. Cf. *Ex parte Hudgings,* 249 U. S. 378, 383.

This routine intracircuit affair presents nothing calling for the exercise of this Court's supervisory power, and the case would have been much better left with the Court of Appeals by a denial of certiorari.

I would affirm.