**UNITED STATES of America,
Plaintiff,**

v.

**James P. CANTILLON, Defendant.**

Crim. No. 4433–CC.

United States District Court,
C. D. California.

Jan. 9, 1970.

William M. Byrne, U. S. Atty., Gerald F. Uelmen, Asst. U. S. Atty., for the United States.

John E. Glover, Beverly Hills, Cal., for defendant.

## ORDER DISMISSING INDICTMENT

CARR, District Judge.

The indictment here charges that on or about July 24, 1968, and July 26, 1968, the defendant "did misbehave in the presence of a court of the United States and so near thereto as to obstruct the administration of justice * * *."

The indictment further charges that during an inquiry "by and in the presence of the United States District Court for the Central District of California into a matter concerning the unlawful disclosure, receipt, possession and use of grand jury transcripts obtained in violation of Rule 6(e), Federal Rules of Criminal Procedure, * * * defendant CANTILLON, with intent to mislead the court, did knowingly and wilfully fail to respond to the following questions:

"THE COURT: Has any of you seen it [a transcript of Phil Silvers' testimony before the grand jury] before?

\* \* \* \* \* \*

"Mr. Byrne came to see me last night, and the Government is quite concerned—and I think understandably so—about what it concludes may be a leak in their Grand Jury processes involving the recording of what goes on before the Grand Jury.

"This stems from the fact the Silver transcript, which had not been released by the Government wound up on the counsel table out there.

"The Government's concern is not just for the Silver transcript or other transcripts that might be extant in this case, but their whole system.

"I think it is fair to say the Government is undertaking an inquiry as to the reason for this.

\* \* \* \* \* \*

"MR. BYRNE: Does any of counsel have any information or knowledge as to how the Silver transcript got in their possession?"

The indictment then charges that the defendant did conceal from the court that he did have information and knowledge as to how the Silvers transcript came into the possession of defense counsel and "that he had previously seen a copy * * *."

The indictment purportedly sets forth an offense (contempt) under Section 401(1), Title 18, United States Code.[1]

Pursuant to order of this court, a bill of particulars was filed by the Govern-

---

1. " § 401. Power of court

   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; * * *."

ment in which, among other things, it was alleged that the inquiry "by and in the presence of the United States District Court was precipitated by the discovery, during the course of the trial of the case of United States v. Friedman, et al., No. 1432-WG-Crim., of a grand jury transcript of the witness Phil Silvers on counsel table used by the defense." The bill further alleges as follows: that "* * * the matter was called to the attention of the Judge presiding over the trial at a conference in chambers, reported by a court reporter"; that "Thereafter, the Court, referring to the Phil Silvers transcript which Mr. Cooper brought into chambers, inquired, 'Has any of you seen it before?' Only Mr. Cooper responded to the question, saying, 'I have it. I had it in my file, your Honor.' The defendant James P. Cantillon remained silent."

The bill of particulars also alleges that at a "second conference" on July 26, 1968, held in the chambers of Judge Gray, the United States Attorney inquired if any counsel had information or knowledge as to how the Silvers transcript "got into their possession?" Three of the defense counsel present responded, two to the effect that they had no knowledge, and the third stated that he had found it [the transcript] "in the table in the courtroom." The defendant remained silent.

█ The Government contends that the failure of the defendant to respond during the two above mentioned conferences was an obstruction of justice and therefore a contempt. Several questions immediately arise: whether the proceedings in chambers were an inquiry by the court or a mere conference in which the court sought to aid the Government in its proposed investigation; and whether there was a duty on the part of the defendant to answer, and if there was such a duty whether his failure to respond disrupted the judicial business of the court so as to cause an obstruction of justice. It should be noted that the court in one of the conferences stated, "* * * the Government is undertak-ing an inquiry as to the reason for this." It is difficult to determine whether this was intended to mean that the court was merely assisting the Government's inquiry or whether the court itself was undertaking an inquiry. If it was merely an effort on the part of the court to assist an inquiry by the Government, it may be open to question whether judicial processes were in motion. Absent the exercise of a judicial function, there could hardly be a disruption of judicial business constituting an obstruction of justice.

The Government argues that because the court had previously ordered that the Grand Jury transcripts of prospective Government witnesses should be released to defense counsel forty-eight hours prior to the witness being called, that the court was protecting the processes of the court when inquiring into the possession of the transcript in question prior to the forty-eight hour period. Thus the Government argues there was a duty upon the part of counsel to answer the court's inquiry respecting the Silvers transcript.

█ A criminal offense must be charged with certainty. Cyc.Fed.Proc. 42.38; Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. In United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, the court stated that the purpose of an indictment is "* * * to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. * * *" In *Russell*, the Supreme Court in a footnote on page 768, 369 U.S. 749, on page 1049, 82 S.Ct. 1038, on page 253, 8 L.Ed.2d 240, stated in referring to Cruikshank, "This principle enunciated in Cruikshank retains undiminished vitality * * *."

█ Here the facts relied upon to prove an offense against the accused are sufficiently set out to afford this court the opportunity to determine whether or not they are sufficient in law to sustain a conviction. To support a conviction

there must have been an actual obstruction of justice. In re McConnell, 370 U. S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434, 437. The Supreme Court in *McConnell* clearly stated the nature of an obstruction to the performance of judicial duty:

"An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted * * *." [370 U.S. at p. 234, 82 S.Ct. at p. 1291, at page 437]

■ The Government argues that the mere silence of the defendant amounted to an obstruction of justice. Ordinarily before a witness may be held in contempt he must be afforded a clear opportunity to answer any questions put to him during the judicial proceeding. It is only after refusal and an order of the court to answer that the witness becomes guilty of contempt. Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609.

In the instant case there was during the first conference an inquiry by the court when there were four defense attorneys present. Only one of those attorneys responded to the question by saying, "I have it. I had it in my file, your Honor." At the second conference, when the inquiry was made by the United States Attorney, there were four defense attorneys present, including the defendant, at which time three of the attorneys answered the United States Attorney while the defendant remained silent.

■ Silence or the failure to answer in order to constitute a contempt by obstructing justice would necessarily require a disruption of the court's judicial business. Assuming a disruption of judicial business, to sustain a conviction the proof would have to establish that a defendant's failure to answer caused a disruption of judicial business and that a defendant's failure to answer was not because of lack of understanding but because of a deliberate refusal to answer. Of course proof would undoubtedly be required to show a defendant was aware of his duty to answer and his refusal constituted a defiance of the court. Furthermore, it is doubtful if a conviction could be sustained in the absence of an order by the court to a defendant to answer. Another problem lurking in the shadows is that of defendant's privilege against self-incrimination. If a defendant is to be aware of his privilege he must understand the question put to him and his duty to answer. See: Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889.

■ The facts alleged in the indictment and the bill of particulars are insufficient to support a conviction if one should be had in the case.

It must be concluded that no disruption of the court's business resulted from the defendant's failure to answer the inquiry by the court or by the United States Attorney which is a necessary element before the power to punish for contempt may be exerted.

It is, therefore, ordered that the indictment against the defendant be and hereby is dismissed for failure to state an offense.