**JeRoyd W. GREENE, Jr., etc.**

v.

**The Honorable J. Randolph TUCKER, Jr.**

**Civ. A. No. 174–73–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

May 14, 1974.

Robert P. Geary, Richmond, Va., for plaintiff.

James E. Kulp, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Petitioner, JeRoyd W. Greene, Jr., seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his state conviction by the Hustings Court of the City of Richmond for criminal contempt. He contends that the procedures under which he was convicted denied him due process and equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States. The Court has deter-mined that a plenary fact-finding hearing is unnecessary, and the matter is now ripe for disposition.

The facts, as they appear in the transcript of the hearing wherein the contempt allegedly occurred, are as follows: The incident in question arose during trial in the case of Commonwealth v. Bullock, begun on January 18, 1972, before the Honorable J. Randolph Tucker, Judge of the Hustings Court of the City of Richmond. The defendant in that case was represented by petitioner Greene, who is an attorney of considerable experience. During an initial inquiry by the Court, petitioner stated that he was ready for trial. The Court then commenced the impanelling of the jury.

After twenty members of the venire had been impaneled, petitioner asked that the entire venire be temporarily excused. Upon their departure, Greene noted that the defendant in the case was Black, that the victim was White, that the charge was murder, that the population of Richmond was close to fifty per cent Black, and that of the twenty jurors impanelled only two were Black. He then alleged racial discrimination in the composition of the jury panel, stated he was not prepared to go forward with the trial, and moved that another panel be drawn.

While Judge Tucker agreed that there were unusually few Blacks on the panel, he expressed the view that the situation could be attributed to happenstance. The motion for a new venire was denied.

Petitioner again indicated that he was not prepared to go forward with the chosen panel since in his opinion the remedies available through appellate review of or collateral attack upon a potential conviction were inadequate. Petitioner then again moved for another venire which, after an expansion of petitioner's views, resulted in the following colloquy:

THE COURT: The Court's already ruled on the motion; the motion is denied. We'll go forward with the trial. When you return the jurors, bring the

panel back in and put them in the position in which they were and then let the other jurors be seated in the spectator's section.

MR. GREENE: Your Honor, again, I'm not prepared to go forward with this case and I am going to indicate to the Court that the only remedy that I see that could be valid for my client is for me not to participate in this trial until a representative cross-section of the jury is called. Now, we—

THE COURT: Well, the Court orders you to go ahead with the trial, Mr. Greene. If you refuse, you'll be liable for contempt of Court.

MR. GREENE: Yes, sir, I understand that, sir, but even under the pale of that, I refuse to go forward on the basis that I think that I'm operating in the best interest of my client.

THE COURT: You're—you're refusing before this Court to go forward?

MR. GREENE: On the basis that I don't think that the—

THE COURT: I understand what your basis is. The Court has denied your motion. You're refusing to go forward with this trial:

MR. GREENE: Yes, sir, on the basis that I've stated.

THE COURT: All right, you be prepared to face the Court to show cause why you should not be punished for contempt.

MR. GREENE: Yes, sir.

THE COURT: And I'll set down a time for that hearing.

MR. GREENE: Yes, sir. May I request a jury for that, Your Honor?

THE COURT: You certainly may.

MR. GREENE: All right.

THE COURT: I think juries are allowed in—. I—let me before I make a final decision on that basis, there is some limitation as to when a jury is allowed. I'll let you know this after we've recessed.

MR. GREENE: Yes, sir.

THE COURT: But I want you to fully understand the consequences of this. The Court considers this a very serious contempt of the Court for you to refuse to go forward. This is not the way to approach this sort of thing. You're an officer of the Court and I see no excuse for your behavior.

MR. GREENE: Yes, sir. But Your Honor must recognize that I do have ethical responsibilities to protect my client's rights and as I said before, I do not think that the relief which could possibly be granted, i. e., to the right of appeal or to other post-conviction remedies would be sufficient to protect his rights and I have to take this stand.

THE COURT: All right, Mr. Greene, you know the chance you're taking. I'll set down a hearing for contempt of Court. Return the jury, please.

Transcript of Commonwealth v. Bullock, Jan. 18, 1973, pp. 13–16.

On February 3, 1972, a hearing was held on motions in petitioner's criminal contempt case. At this hearing, the Court indicated that there appeared some confusion, for which the Court conceded some responsibility,[1] regarding the nature of the upcoming proceeding. Judge Tucker went on to state that petitioner had been held guilty of contempt on the morning of the *Bullock* trial and that the upcoming hearing would go only to punishment.

1. "THE COURT: I say I think the language of this transcript makes it pretty clear that I did hold him in contempt. Well, I see the language that you're talking about, 'All right, Mr. Greene, you know the chance you're taking. I'll set down a hearing for contempt of Court.' That's badly expressed, I'll admit. I should have said for punishment. The Show Cause Order might be misleading in that it says, ' . . . show cause why you should not be held in contempt.' But actually what the language of that Show Cause Order means is show cause—having already been in contempt—to show cause why the Court should not remove its judgment that you are in contempt." Tr. of Hearing of Feb. 3, 1972, p. 39. The Court went on to state that it "[knew] what its purpose was" and that although a full hearing would be had, it would be on the issue of punishment not guilt.

On February 8, 1972, a second motions hearing was held. At that time the Court indicated that a hearing with regard to the suspension of petitioner's right to practice before the court would be held sometime after the upcoming "purge" hearing. The Court also reiterated its finding that petitioner had already been held in contempt. On motion of counsel, the Court went on to indicate for the first time the two specific subsections of Virginia's contempt statute for the violation of which petitioner had been found guilty and that a single punishment was contemplated for both violations. Transcript of Hearing of February 8, 1972, pp. 72, 76. Finally, the judge denied a motion that he disqualify himself.

By letter of February 18, 1972, the Court ruled on petitioner's motion for a jury trial which had originally been made at the *Bullock* trial and was re-raised at subsequent hearings. Judge Tucker stated that "[s]ince the Court is willing at this time to assure Mr. Greene that any punishment that might be imposed would not be in excess of six months in jail and a $500 fine," the motion for trial by jury was denied.

Petitioner's final evidentiary hearing was held on March 1, 1972 before Judge Tucker. Motions which had been made at the previous hearings were renewed, including the motion that Judge Tucker disqualify himself; for the Court to grant petitioner a plenary hearing on the question of his guilt or innocence on the contempt; for the Court to grant petitioner a trial by jury and for the Court to declare unconstitutional §§ 18.-1–292 and 18.1–295 of the Virginia Code. All of these motions were denied by the Court and exceptions were noted. The hearing was then held with Mr. Greene as the only witness.

In its final ruling, the Court indicated that it considered the order to Mr. Greene on January 18 to go forward with the trial a lawful one, and one with which Mr. Greene, as an officer of the court, was bound to comply. The Court found that petitioner had not purged himself of the contempt of which he had previously been found guilty. The Court then imposed a punishment of a fine of five hundred dollars ($500.00) and a ten (10) day jail sentence. The jail sentence was suspended upon the condition that petitioner in all future dealings with the Court, conduct himself in a manner befitting an attorney and an officer of the court.

█ Petitioner's initial contention is that the trial court's denial of a plenary hearing to determine guilt constituted a denial of due process. Although Va. Code Ann. § 18.1–292 appears to authorize summary proceedings for certain specific acts of contempt whether committed within or outside of the presence of the court, the acts committed by petitioner in this case were not only committed in the presence of the court but were elaborated upon to the court each step of the way. Thus the trial court's action in this case is similar to action under Rule 42(a), Federal Rules of Criminal Procedure, which allows summary proceedings when the purported contempt is committed in the presence of the court.[2] Petitioner here does not appear to challenge the constitutionality of all such summary adjudication of contempt. See Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 1341 (1952); Johnson v. Mississippi, 403 U. S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971). Rather, he alleges that if the contempt is such as does not require immediate citation and punishment, then summary proceedings are unjustified. In interpreting Rule 42(a), the United States Supreme Court has rejected this reasoning:

> The Rule in question contemplates that occasions may arise when the trial judge must immediately arrest any conduct of such nature that its continuance would break up a trial, so

---

2. The Court need not reach the constitutionality of summary action under the Virginia statute for contempts not committed in the court's presence.

it gives him power to do so summarily. But the petitioners here contend that the Rule not only permits but requires its instant exercise, so that once the emergency has been survived punishment may no longer be summary but can only be administered by the alternative method allowed by Rule 42(b). We think "summary" as used in this Rule does not refer to the timing of the action with reference to the offense but refers to a procedure which dispenses with the formality, delay and digression that would result from the issuance of process, service of complaint and answer, holding hearings, taking evidence, listening to arguments, awaiting briefs, submission of findings, and all that goes with a conventional court trial. The purpose of that procedure is to inform the court of events not within its own knowledge. The Rule allows summary procedure only as to offenses within the knowledge of the judge because they occurred in his presence. *Sacher, supra,* 343 U.S. at 9.

Similarly, the Court rejected the argument that immediate sentencing for contempt was required:

If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. We think it less likely that unfair condemnation of counsel will occur if the more deliberate course be permitted.

We hold that Rule 42 allows the trial judge, upon the occurrence in his presence of a contempt, immediately and summarily to punish it, if, in his opinion, delay will prejudice the trial. We hold, on the other hand, that if he believes the exigencies of the trial require that he defer judgment until its completion he may do so without extinguishing his power. *Id.* at 11.

See also, Mayberry v. Pennsylvania, 400 U.S. 455, 463, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). Petitioner's reliance on Johnson v. Mississippi, *supra,* as establishing a deviation from the Court's *Sacher* opinion is misplaced. While action of the state judge in that case was not immediate and a plenary hearing was ordered on remand, the justification for requiring that hearing appears primarily based upon the fact that "from [the] record [the Supreme Court could] not be sure that Judge Perry was personally aware of the contemptuous action when it occurred. . . . It would, therefore, seem that a fair hearing would entail the opportunity to show that the version of the event related to the judge was inaccurate, misleading or incomplete." *Johnson, supra,* at 215. The exception to the general requirement of a full fact-finding hearing in cases of contempt committed "directly under the eye or within the view of the court" is not grounded solely in the need for immediate vindication of the Court's integrity, but is also supported by the fact that "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense." Cooke v. United States, 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925). See 8A Moore's Federal Practice ¶ 42.02[3]. In such a case the Court may "proceed upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form." Ex parte Terry, 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405 (1888).

In the instant case, there can be no question that the precise conduct which Judge Tucker considered contemptuous was fully understood by all concerned. Petitioner stated that he refused to go forward and assigned reasons therefor. The Court indicated that in its opinion the reasons stated did not justify the refusal and that it considered the refusal "a very serious contempt." Petitioner again refused to go forward. The facts were clear. In such a case, Judge Tucker had constitutional power to adjudicate contempt and set punishment immediately. Under such circum-

stances due process does not require, except as discussed below with regard to jury trial and disqualification of judges, the taking of further evidence. Similarly, for the reasons stated in *Sacher, supra,* he could adjudge contempt and withhold punishment.[3]

 There is confusion in the record as to when the actual adjudication that petitioner was guilty of contempt was made. Despite some conceded imprecision in communication, Judge Tucker intended to adjudicate contempt the morning of the *Bullock* trial. He certainly had such power. While the transcript is ambiguous, in such circumstances a judge's understanding of what transpired in his court must be given substantial if not conclusive weight. The Court, therefore, finds that petitioner was found in contempt the morning the conduct complained of occurred. In light of the facts and law, the Court further finds that any confusion on the matter, regardless by whom induced, was not sufficient in this case to prejudice the petitioner fundamentally. While technical points may have been in doubt, it is reasonably clear that all concerned appreciated the substance of what was occurring to the extent that no fundamental unfairness resulted.

Two major qualifications to the acceptance of summary contempt action by a trial judge have been established. The first has to do with cases of "serious" criminal contempt and the right to trial by jury; the second with when a judge must recuse himself. Both are raised by petitioner as applicable to this case.

██ ██ Despite what has been heretofore noted, summary conviction for criminal contempt has been effectively limited to cases where the contempt is judged by the court not to constitute "serious" criminal conduct. In Bloom v.

Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), upholding the right to jury trial in certain criminal contempt cases, the Supreme Court stated:

> Some special mention of contempts in the presence of the judge is warranted. Rule 42(a) of the Federal Rules of Criminal Procedure provides that "[a] criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." This rule reflects the common-law rule which is widely if not uniformly followed in the States. Although Rule 42(a) is based in part on the premise that it is not necessary specially to present the facts of a contempt which occurred in the very presence of the judge, it also rests on the need to maintain order and a deliberate atmosphere in the courtroom. The power of a judge to quell disturbance cannot attend upon the impanelling of a jury. There is, therefore, a strong temptation to make exception to the rule we establish today for disorders in the courtroom. We are convinced, however, that no such special rule is needed. It is old law that the guarantees of jury trial found in Article III and the Sixth Amendment do not apply to petty offenses. Only today we have reaffirmed that position. Duncan v. Louisiana, *supra* [391 U.S.], at 159–162, [88 S.Ct., at 1452–1454, 20 L.Ed.2d 491]. By deciding to treat criminal contempt like other crimes insofar as the right to jury trial is concerned, we similarly place it under the rule that petty crimes need not be tried to a jury. 391 U.S. at 209–210.

Contempts punishable by more than six months imprisonment or a greater than $500 fine or both appear to constitute

---

3. Judge Tucker's consideration of petitioner's motion for a trial by jury is not necessarily inconsistent with his summary adjudication of contempt. Given the fact that entitlement to a jury necessarily turns on a determination as to punishment, it would be appropriate for a judge to adjudicate contempt while reserving his right to vacate his order and grant a jury trial should he decide that proper punishment would go beyond that associated with "petty" offenses. See *Sacher, supra.*

"serious" crimes for jury trial purposes. Cheff v. Schnachenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). Furthermore, "when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, [the Court must] look to the penalty actually imposed as the best evidence of the seriousness of the offense." *Bloom, supra,* at 211. Since Virginia does not specify sentencing limits for cases of contempt, this rule applies in the present case. Petitioner was sentenced to ten days in jail (which sentence was suspended) and a $500 fine. Therefore petitioner was not entitled to a trial by jury and his summary conviction is not infirm due to the denial of his jury request.[4]

Petitioner next alleges that Judge Tucker should have disqualified himself from ruling on the alleged contempt. Petitioner concedes that ordinarily disqualification is not required where the contempt does not involve a personal attack on the presiding judge. See Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). But he goes on to contend that in this case the judge had "pre-conceived notions of guilt or innocence" which demanded recusation. Petitioner does not contend that these "notions" existed prior to the *Bullock* trial, and since guilt was summarily adjudicated at that trial, any alleged post-trial manifestations of a belief in petitioner's guilt do not indicate impropriety.[5]

Petitioner next challenges the sufficiency of the evidence to sustain his conviction. This allegation is supported primarily by Greene's assertion that his conduct at the *Bullock* trial was in the good faith pursuit of his client's interests. It must be noted, however, that conduct in what is perceived as a client's interest may also be conduct contemptuous of the court. The two are not mutually exclusive.

As stated in Williams v. Peyton, 414 F.2d 776, 777 (4th Cir. 1969):

> When the sufficiency of the evidence supporting a state conviction is challenged by way of federal habeas corpus, the sole constitutional question is whether the conviction rests upon any evidence at all. Young v. Boles, 343 F.2d 136 (4th Cir. 1965). The probative strength of the evidence is not in issue.

Furthermore, specific intent to commit a crime must often be proved by circumstantial evidence. From an examination of the record, highlights of which are set out above, the Court is satisfied that there was evidence from which the trial court could find all of the elements of criminal contempt.

Finally, petitioner alleges that the Virginia Code provisions relating to contempt of court are unconstitutional.[6]

First, he alleges that those provisions are discriminatory on their face. Section 18.1–292 of the Code of Virginia contains five categories of conduct for which a court and judge may issue attachments for contempt and punish them summarily. Section 18.1–295 provides for cases dealing with the first category of § 18.1–292 only, that is, misbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice. In such cases,

---

4. The fact that collateral consequences might attach to conviction, such as subsequent suspension from practicing before a given court, is not such an inherent part of the sentence imposed to cause a different view of the nature of the proceeding.

5. The Court does not mean to imply any finding that the granting by the judge of a newspaper interview on the subject of the local jury selection system to which petitioner's claim on this score has reference was in fact an indication of the judge's belief in petitioner's guilt. The merits of petitioner's argument on jury selection were not at issue in the finding of contempt.

6. In his original petition, petitioner also challenged as unconstitutional the structure and procedures of the Virginia appellate system. That point has not been briefed by either side and is presumed waived.

the court may not impose a fine exceeding fifty dollars or imprisonment for more than ten days without a jury. Petitioner submits that requiring a jury trial in this one subdivision of § 18.1–292 and not allowing it by right for the other four subdivisions of the statute constitutes a denial of equal protection of the law as guaranteed by the Fourteenth Amendment of the United States Constitution.

As discussed above, there is no constitutional right to jury trial for petty offenses. Thus there is no "fundamental interest" infringed in the denial of jury trial within that range. The proper standard for equal protection review of this legislative classification, therefore, requires that the provision be upheld if it bears "[some] rational relationship to a legitimate state purpose." San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed. 2d 16 (1973). The Court is not convinced that no rational considerations support the special treatment provided for subsection (1) contempts. Subsections (2), (3), and (5) relate to specified types of misconduct, i. e., "violence, or threats of violence, to a judge," "vile, contemptuous or insulting language addressed to or published of a judge," and resistance to a lawful court order. Subsection (4) is addressed only to officers of the court with whom a special sensitivity to courtroom decorum can be assumed. Subsection (1), however, is a more general provision encompassing "[m]isbehavior in the presence of the court." Since this provision is not statutorily restricted in terms of highly specific conduct or specific persons to which it is addressed, it cannot be considered unreasonable for the legislature to have deemed it in the interest of justice to provide a slightly greater procedural safeguard, in the form of jury trial, for those contempts of this more general subsection which will be punished by a fine exceeding $50 or imprisonment of more than 10 days. Petitioner's attack on this ground must therefore fail.

Second, petitioner alleges that the Code provisions are so vague as to be violative of the due process clause of the Fourteenth Amendment. The two subsections of the statute under which petitioner was convicted read as follows:

(4) Misbehavior of an officer of the court in his official character;

(5) Disobedience or resistance of an officer of the court, juror, witness or other person to any lawful process, judgment, decree or order of the Court.

There is nothing vague about the language of subsection (5). Established legal channels and procedures exist for challenging court orders; any resistance outside of those channels to legal court orders is prohibited. Petitioner in fact does not address this section in his brief.

With regard to subsection (4), petitioner's claim raises delicate questions. The right of a defendant, particularly a criminal defendant, to the vigorous assistance of his counsel is fundamental to our system. No unnecessary "chilling" of a counsel's inclination to pursue strenuously his client's interests through the courts is intended to be tolerated. On the other hand, the order and dignity of which courtroom proceedings in this country partake are equally essential elements in the provision of fair and even-handed justice. As stated in In re McConnell, 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962):

While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice.

There is no question in this case that petitioner's conduct was "misbehavior"

under any reasonable interpretation of that term, and that he knew it. To this extent, petitioner received fair notice. However, the Court's examination must go somewhat further in light of the crucial role that adversary advocacy plays in our system of justice. The Court deems it necessary to consider whether the statute under which petitioner was convicted might undermine and suppress the pursuit by other lawyers of an activity upon which our social system is premised. *Cf.* Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Although the provision here is addressed to all officers of the Court, the expanded view of standing discussed above is applicable only to lawyers, based as it is on their unique and vital function.

Precisely because of the integral role of petitioner's profession in the functioning of the state and federal judicial systems, members of that profession are presumed to understand the delicate interaction of court and counsel which these systems demand. They are required to be formally trained in the workings of courts and trial attorneys hold themselves out as experts in courtroom procedures. They are presumed to know that generally "[a]n obstruction to the performance of judicial duty resulting from an act done in the presence of the court is . . . the characteristic upon which the power to punish contempt [summarily] must rest." Ex

parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 63 L.Ed. 656 (1919).[7] *Cf.* In re McConnell, *supra.* While an obstruction need not be physical, as it was in petitioner's case, the element of obstruction or disruption is clear. Furthermore, he is presumed to know that he can not validly be censured for his respectful pursuit of all proper defenses and his assertion of all appropriate exceptions to adverse rulings. *Cf.* In re McConnell, *supra.* While the existence of summary contempt power necessarily carries with it the potential for abuse, attorneys are presumed aware of the availability of vindication through appellate and collateral attacks upon contempt convictions which in fact infringe upon constitutionally protected interests.

Thus, in the context of lawyers at least, subsection (4) is sufficiently definite to provide the notice requisite to constitutionality under the due process clause. Given the subtle interaction of court and bar, the section may be as definite as is equal to its purpose. With regard to contempt, court and counsel work under the twin pulls of duty to protect the interests entrusted to each and limitation on the methods by which the ends of each may be pursued. An appreciation of the parameters of these duties and limitations is the essence of their professional characters.

For the reasons stated above, the petition will be dismissed.

7. "Existing within the limits of and sanctioned by the Constitution, the power to punish for contempt committed in the presence of the court is not controlled by the limitations of the Constitution as to modes of accusation and methods of trial generally safeguarding the rights of the citizen. This, however, expresses no purpose to exempt judicial authority from constitutional limitations, since its great and only purpose is to secure judicial authority from obstruction in the performance of its duties to the end that means appropriate for the preservation and enforcement of the Constitution may be secured. Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186; Marshall v. Gordon, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881, L.R.A.1917F, 279, Ann.Cas.1918B, 371." *Hudgings, supra,* at 383.