358 So.2d 63 (1978)
James GILMOUR, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-440.
District Court of Appeal of Florida, Third District.
April 18, 1978.
*64 Horton, Perse & Ginsberg, Miami, for appellant.
Robert L. Shevin, Atty. Gen., for appellee.
Alan E. Weinstein, Miami Beach, for Florida Criminal Defense Attorneys' Association, as amicus curiae.
Before KEHOE, J., BOYD, JOSEPH A., JR., Associate Judge and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL (Ret.), Associate Judge.
This appeal is by James Gilmour, an attorney, from a judgment holding him in contempt of the circuit court of Dade County, for which he was sentenced to be confined in the county jail for eight days and was fined $500.00. Enforcement has been deferred pending his appeal. We hold the judgment of contempt was error, and reverse.
The incident forming the basis of the contempt judgment took place during a jury trial of two defendants charged with murder in the first degree. One of the defendants, Patricia Andrews, was represented by Gilmour. The co-defendant, Mark Sublette, was represented by another attorney.
At the trial Gilmour's client, the defendant Andrews, testified. The co-defendant, Sublette, did not testify. In his final argument Attorney Gilmour called attention to the fact that his client had testified and to the absence of testimony by the co-defendant.
Prior to trial the court had ruled against granting a severance. The court's instruction to counsel with reference to final argument did not go beyond directing them to restrict themselves to discussion of the evidence and inferences reasonably to be drawn from the evidence and "to avoid problems concerning mistrial". There was no order or direct instruction to counsel to refrain from comment on the failure of a defendant to testify or on absence of evidence from a defendant. At the time such comments were made by Gilmour in his argument, the court denied co-defendant's objection thereto and, when considering the latter's motion for mistrial, the court questioned the jurors and determined that no prejudice had resulted.[1] Later, in his *65 charge, the court instructed the jury as to the right of a defendant to testify or not, as he chose, and instructed them to disregard any reference which had been made to absence of testimony of a defendant.
In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), the court said:
"An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted... ."
To the same effect, in Phillips v. State, 147 So.2d 163 (Fla. 3d DCA 1962), this court said:
"In addition to their inherent power to punish for direct, indirect or constructive contempt, courts have had such power conferred upon them by the legislature. See State ex rel. Giblin v. Sullivan, 157 Fla. 496, 26 So.2d 509; §§ 38.22 and 38.23, Fla. Stat., F.S.A. However, judicial wisdom and experience demand that this extraordinary power be not used except to prevent actual and direct obstruction of, or interference with, the administration of justice by attorneys at law in the manner or means used to present their controversies in the courts. State ex rel. Giblin v. Sullivan, supra; State ex rel. McGregor v. Peacock, 113 Fla. 816, 152 So. 616. * * *"
Here, not only was the action for which the attorney was held in contempt not in violation of any direct order or ruling of the court, but, as shown by the court's treatment of the case with reference to this matter, it did not result in any actual and direct obstruction or interference with the administration of justice, or result in "an obstruction to the performance of judicial duty".
At the conclusion of the case, the court held a hearing upon which the judgment of contempt was entered. In the course thereof Gilmour explained that counsel for co-defendant had sought throughout to convince the jury that his client went back to the scene and committed the murder, and that he, Gilmour, had chosen to have his client testify to the fact that "she was never in the room nor did she ever assault Louis Broeker", and that in commenting on his client's testimony and the failure of the co-defendant to testify he had relied on his right and duty to do so in proper defense of his client on authority of the de Luna decision by the Fifth Circuit Court of Appeals [de Luna v. United States, 308 F.2d 140 (5th Cir.1962)], and unsuccessfully requested that the court read the case before ruling. See also: Gurleski v. United States, 405 F.2d 253 (5th Cir.1968); United States v. Nakaladski, 481 F.2d 289 (5th Cir.1973); United States v. Enten, 332 F. Supp. 249 (D.C.Dist.Ct. 1971).
de Luna shows that when the arguments or defenses of jointly tried defendants are antagonistic, such as here where the arguments and theory of defense for one who did not testify amounted to an attempt to shunt the guilt to the other, the respective rights of the defendants collide and cause a dilemma. The former has his carefully protected right to silence. According to de Luna the latter has a right to confrontation which allows him to invoke every inference from his co-defendant's absence from the stand. This matter as dealt with in de Luna was discussed in Gurleski v. United States, supra, and United States v. Enten, supra. On the authority of de Luna the appellant-attorney was entitled to assume, notwithstanding denial of severance, that the defendants were entitled to the benefit of their respective separate rights essential to their defenses. The exercise by the attorney of the right he understood the law recognized in such case, was done in performance of his duty to his client.
In a case decided recently by this court, Ward v. State, 354 So.2d 438 (Fla. 3d DCA 1978), it was held that "A disclaimer of *66 intent to be contemptuous is not sufficient to deprive the court of the power to punish for contempt." However, in that case the court was dealing with refusal of an attorney to obey the rulings of a trial judge on the ground that the attorney considered the rulings to be improper. That was not the situation here. As pointed out above, in the instant case the appellant did not act in violation of any express order or ruling. Compare Vernell v. State ex rel. Gerstein, 212 So.2d 11 (Fla. 3d DCA 1968); Kleinfeld v. State, 270 So.2d 22 (Fla. 3d DCA 1972). Here the attorney did not rely on lack of intent to be contemptuous. In response, when cited for contempt, his position was that on authority of de Luna his comments were made properly in performance of his duty to so act in the exercise of a right of his client in the latter's defense.[2] Moreover, as also pointed out above, appellant's action did not operate to obstruct the performance of judicial duty. The trial proceeded unimpeded, with the court concluding no prejudice was involved.
We hold the record does not support the conclusion and holding of the court that the making of such comments by the appellant-attorney in final argument was contemptuous by being inconsistent with the court's pre-trial ruling as to severance or rulings as to arguments. While we need not and do not express opinion on whether the law in Florida is in conformity to that expressed in de Luna, with reference to this matter, we hold that in the absence of a contrary pronouncement of the law in Florida the action of the attorney in relying on de Luna (clearly in point on the facts and circumstances of the case) authorized the comments and that in fairness and justice the making of the comments in question could not operate to place the attorney in contempt of the court. This is particularly evident when the comments appeared to have been made in good faith in defense of the client,[3] and were not regarded by the court as impeding the case or causing a mistrial.[4]
*67 For the reasons stated, the judgment is reversed.
NOTES
[1] Incident to the denial of the motion for mistrial, in a sidebar conference, the record shows the following:

"THE COURT: I watched the jury as I polled them. I was satisfied from the answers that I received from the members of the panel. I do not feel that any prejudice was involved by the statements that were made by Mr. Gilmour. So, I am going to deny your motion."
[2] In de Luna, with reference to similar comments in final argument in a case involving like circumstances, the court said [308 F.2d, at 143]:

"* * * These were not casual or isolated references; they were integral to Gomez's defense. And considering the case from Gomez's point of view, his attorneys should be free to draw all rational inferences from the failure of a co-defendant to testify, just as an attorney is free to comment on the effect of any interested party's failure to produce material evidence in his possession or to call witnesses who have of pertinent facts. Gomez has rights as well as de Luna, and they should be no less than if he were prosecuted singly. His right to confrontation allows him to invoke every inference from de Luna's absence from the stand."
[3] See: Florida Code of Professional Responsibility, Canon 7, EC 7-1 and 7-4. In the American Bar Association Canons of Professional Ethics, Canon 15 provides:

"The lawyer owes `entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client." [emphasis supplied]
[4] In the contempt order, the court stated:

"A Motion for Mistrial was denied and the jury was questioned concerning the impact of Mr. Gilmour's statements to them. Having been satisfied that no prejudicial effects had taken place as a result of these comments Mr. Goldstein, representing co-defendant Mr. Sublette, delivered the opening part of his closing statement. Following a short recess and before the State made its closing argument the Court polled individually each of the jurors and again satisfied itself that no harmful or prejudicial error had occurred to Mr. Sublette as a result of these comments, * * *."
As to whether and to what extent the said comments of counsel were prejudicial to the co-defendant, we express no opinion, since to do so is not necessary to the decision of this contempt matter.