**Ex parte Thomas A. CURTIS.**

No. 59108.

Court of Criminal Appeals of Texas, En Banc.

July 19, 1978.

Selden B. Hale, Walter P. Wolfram and Russell C. Busby, Amarillo, David B. Sheppard, Austin, for Thomas A. Curtis.

Wayne P. Sturdivant and Marvin W. Jones, Amarillo, for Judge Poff.

OPINION

ROBERTS, Judge.

On July 11, 1978, relator was found guilty of criminal contempt of the 47th District Court of Potter County and sentenced to serve three days in jail. He then filed this application for a writ of habeas corpus in this Court. The writ is properly before us as an original writ of habeas corpus, and we will entertain it as such.[1]

Relator is the district attorney for the 47th Judicial District. On March 9, 1978, he was representing the State in a pre-trial hearing in the 47th District Court. The principal purpose of the hearing was to consider defensive motions to quash various portions of the indictments in two cases pending in that court—cause numbers 18,-219–A and 18,282–A,[2] styled The State of Texas versus Robert Hicks.

At the beginning of the hearing the trial court announced that he was consolidating the two cases under the indictment numbered 18,219–A. Then, after determining that the defendant was satisfied with the State's response to the defendant's motion for discovery, the court proceeded to consider the motions to quash.

Counsel for the defense first urged that the court should quash counts 1, 8, and 9, as well as paragraph 8 of count 2, contained in the indictment for cause number 18,282–A. After a discussion of these parts of the indictment and the law relating to them, this relator, speaking on behalf of the State, agreed to waive counts 8 and 9. The court then indicated that he would not quash count 1 or paragraph 8 of count 2.

Counsel for the defendant then argued the part of his motion to quash which contended that paragraphs 1, 2, 3, 4, and 5 of

---

1. We have granted relator's request for a bond pending the outcome of this application.

2. Later in the hearing, defense counsel stated that he had no objections to the indictment in 18,219–A; all of his contentions centered on the indictment in 18,282–A.

count 2, as well as all of count 14 of the indictment, were barred by limitations. Relator agreed that this contention was meritorious as to the five mentioned paragraphs of count 2, but he disputed the contention as to count 14 because, according to relator, it was a matter of evidence rather than limitations. However, the court ruled that count 14 should be quashed. Relator's entire response was, "Fine. Fine."

Next, counsel for the defendant argued that count 13 of the indictment was not sufficiently specific. Relator disputed counsel's contention, and argued that this count of the indictment was more specific than the law required. The trial court quashed count 13. As with the earlier contentions, the trial judge participated in this discussion by asking questions of counsel for both sides and by expressing the reasons for his agreement or disagreement with the various positions taken by counsel.

Counsel for defendant then proceeded to his last contention—that count 15 of the indictment was not sufficiently specific. The court then asked relator if he wished to be heard on this contention. Relator responded that he did not believe "it would do any good for us to be heard. With all due respect." [3] The trial court then stated that he had ruled against relator only once during the hearing and pointed out to relator that relator had indicted the defendant after the statute of limitations had run. Relator replied that the grand jury indicted the defendant. The court then told relator that he did not want a speech from relator. After a further discussion with defense counsel, the court announced that he would not quash count 15.

Next, defense counsel urged his Motion for the State to Elect, which the court denied. Relator responded that the State had "been left with very little to elect with." Defense counsel then stated that he had no further motions for the court to consider at that time.

At this point, the court asked relator to bring up a request relator had made earlier in the hearing; the request concerned the voir dire examination. Defense counsel suggested that the issue could be discussed in chambers. To this relator replied that he did not want to do anything in chambers with this court. The trial court agreed with relator's sentiments.

Relator then stated that he wanted to avoid the possibility that some remark might contaminate the jury panel. The court agreed that the idea was a good one, but expressed doubt that it could be effectively done. The following exchange then took place (the underlined comments of relator constitute the basis for his being found guilty of contempt):

"MR. CURTIS: Your Honor, you won't listen to me ___

"THE COURT: I'm listening now.

"MR. CURTIS: I don't know how.

"THE COURT: Curtis, I ruled against you one time and you act like a spoiled child. Now let's get over that, okay? All right.

"MR. CURTIS: Will you please call me with the respect that is due any counsel that appears in your court and not Curtis? I think that shows disrespect for counsel. I think your remark ___

"THE COURT: I thought it showed I was trying to get along with you, but like I said, you're acting like a spoiled child. But, Mr. Curtis, I agree with you ___

"MR. CURTIS: Your Honor, I have a right to reply to you ___

"THE COURT: If we've got ___

"MR. CURTIS: I think you're acting like a biased Judge trying to help this Defendant beat a darn good case. And that is given in response.

"THE COURT: And you're making a speech right now and we don't want any of your speeches to the press.

"MR. CURTIS: It was in response, Your Honor. The record will reflect it.

"THE COURT: Now, I thought you were going to tell me about picking a jury. And ___ you don't have any further comments on that.

---

3. Relator also stated that he would not have waived counts 8 and 9 if he had known how the court would rule on the defendant's subsequent contentions.

"MR. CURTIS: I think you ought to make some rules that would protect them from contamination by unfortunate remarks by the Court or anybody else and arrange to do it individually.

"THE COURT: Oh, I'm not going to Voir Dire individually if that's what you're ___

"MR. CURTIS: In some portion individually. Because I really fear in light of what the record will reflect this morning, that the Court itself might contaminate the whole jury panel by some remark he might make.

"THE COURT: Do not want to. And I've been trying to get along with you for two years, Tom, honest. And it really hurts me that you're upset now. Because as I understood those rulings, you agreed to all of them but one. And it ___

"MR. CURTIS: Well, you misunderstood, Your Honor, and if you'll look back over the record you'll see.

"THE COURT: It's just ___ it is just really sad.

"MR. CURTIS: I agree, it's very sad.

"THE COURT: Okay. Well, why don't we try to get along then.

"MR. CURTIS: Your Honor ___

"THE COURT: I referred to you as Tom. I'm sorry. Mr. Curtis. But I would rather refer to you as Tom, honest. And all because I rule against you, that's no reason for you to be upset and, you know ___ anyway, what do you want ___

"MR. CURTIS: Merely because I feel that you are acting ___

"THE COURT: Tom, come on ___

"MR. CURTIS: ___ in favor of this Defendant in derogation of the State's case illegally and improperly, don't be upset ___

"THE COURT: Tom, I think it's time somebody protected somebody's rights around here. You indicted that ___ a Grand Jury indicted that man on five ___

"MR. CURTIS: I notice that is the second ___ that is the reason for my concern about contamination of the jury panel.

"THE COURT: That's fine. And you indicted that man on five counts that you now concede were barred by the statute of limitations. You indicted him on two other counts that you have now waived and you complain with me about the one count that I disagree with you about. Fine.

"We're through, gentlemen.

"MR. KOLIUS: Thank you, Your Honor.

"THE COURT: Okay. 9:00 o'clock Monday."

This concluded the hearing.

Subsequently, the court entered an order finding that relator had made the two contemptuous remarks underlined above. The order also adjudged that relator was guilty of criminal contempt and stated that relator's punishment was ten days in the Potter County jail.

On July 11, 1978, a hearing was held to determine whether relator was guilty or innocent of the contempt charge. Trial was before the Honorable David Wesley Gulley, presiding judge of the 222nd District Court, who was sitting by assignment as presiding judge of the 47th District Court. Evidence was heard, and the court found relator guilty of criminal contempt as a result of his having made the two allegedly contemptuous remarks. The court assessed punishment at three days in jail.

We turn first to the issue of whether the words uttered were contemptuous, for if they were not, the relator is entitled to the relief he seeks and no other issues need be discussed. See *Ex Parte Vogler,* 110 Tex. Cr.R. 579, 582, 9 S.W.2d 733, 734 (1928).

In the case of *In Re Little,* 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972), the judge forced the accused to defend himself pro se because of his lawyer's absence. The supposedly contemptuous remarks were made in closing argument by the defendant, who said that the judge was biased and had prejudged the case. He also argued that he—the defendant—was a political prisoner.

Relying principally on *Holt v. Virginia,* 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965), the Court reversed, saying that the remarks did not constitute criminal contempt, in the absence of a showing of disruptive or boisterous behavior.

In *Holt,* the allegedly contemptuous remarks were contained in a change of venue motion. In the motion, the judge was accused of acting as police officer, chief state's witness, adverse witness against the defense, grand jury, chief prosecutor, and judge—all in a *prior* contempt proceeding pending before the judge. The allegedly contemptuous motion also accused the judge of intimidating and harassing the *prior* contemnor's lawyer. The Supreme Court reversed, holding that the charges of bias were relevant to a motion for change of venue in a contempt case. The Court also emphasized that the words were in plain English, inoffensive, and "appropriate" to charge bias.

The allegedly contemptuous language in this case is similar to that in *Little* and *Holt.* For purposes of comparison, we repeat the relator's remarks:

"Merely because I feel that you are acting in favor of this Defendant in derogation of the State's case illegally and improperly;" and

"I think you're acting like a biased Judge trying to help this Defendant beat a darn good case."

As in *Little,* there is no indication that relator's statements were made in a boisterous tone or that they disrupted the proceedings in any way. Although we cannot and do not endorse the relator's remarks—or the acrimonious dispute of which they were a part—we cannot agree that they were any more contemptuous than the remarks made in *Little* and *Holt.* Furthermore, these remarks were relevant to the issue (of jury contamination) which was being discussed by the relator and the respondent court. See *Holt, supra,* at 136–137, 85 S.Ct. 1375.

In his brief filed in this Court the respondent trial judge has argued that the holding in *Little* is distinguishable from the case before us. Respondent contends that the *Little* Court gave greater leeway to the language of that alleged contemnor because he was forced to go to trial without the assistance of counsel.

The language in the *Little* opinion refutes respondent's contention. The Court specifically held that Little, in defending himself pro se, was "clearly entitled to *as much latitude* in conducting his defense as we have held is enjoyed by counsel vigorously espousing a client's cause. *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962)." 404 U.S., at 555, 92 S.Ct., at 660 (emphasis added). See also *Faretta v. California,* 422 U.S. 806, 835, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The *McConnell* opinion contains language which is pertinent to the case before us:

" . . . The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. The petitioner created no such obstacle here.

"While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice. To preserve the kind of trials that our system envisages, Congress has limited the summary contempt power vested in courts to the least possible power adequate to prevent actual obstruction of justice, and we think that that power did not extend to this case." 370 U.S., at 236, 82 S.Ct., at 1292.

Finally, we call to the attention of the respondent and the relator the language of *Brown v. United States,* 356 U.S. 148, 153, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958), quoted

with approval in *Little,* supra, 404 U.S., at 555, 92 S.Ct., at 660: "Trial courts . . . must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice."

Of course, this admonition applies to lawyers and judges alike. The parties would be wise to remember that the principal function of the criminal justice system is not that the self-esteem of lawyers and judges be preserved; it is that all individuals be tried and sentenced in accordance with law. See *Green v. United States,* 365 U.S. 301, 309, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (Black, J., dissenting); *Duncan v. Magette,* 25 Tex. 245, 253–254 (1860).

The original writ of habeas corpus is granted. The charge against relator is ordered dismissed.

DOUGLAS and W. C. DAVIS, JJ., not participating.

ONION, Presiding Judge, concurring.

I reluctantly concur in the result reached by the majority opinion. I would, however, point out that I do not consider relator's conduct and statements to be ethical or proper. Relator's actions were undignified and discourteous conduct which was demeaning to the tribunal before whom he was appearing as an attorney and officer of the court. See DR 7–106(C)(6), Code of Professional Responsibility—Title 14 App.; Art. 12, § 8, p. 353, Vol. 1A, V.A.C.S.

I concur.

ODOM and TOM G. DAVIS, JJ., join in this concurrence as well as in the majority opinion.